649 F.2d 1160
 9 O.S.H. Cas.(BNA) 1563, 9 O.S.H. Cas.(BNA) 2043,
1981 O.S.H.D. (CCH) P 25,317
CLEVELAND CONSOLIDATED, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond
J. Donovan, Secretary of Labor, Respondents.
 No. 79-3389.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 July 9, 1981.
 Elarbee, Clark & Paul, Robert H. Buckler, Elizabeth F. Reveley, Atlanta, Ga., for petitioner.
 
 
 1
 Marleigh Dover Lang, Appellate Staff, Civ. Div., Dept. of Justice, for respondent Occupational Safety and Health Review Commission.
 
 
 2
 Benjamin W. Mintz, Sol., Allen H. Feldman, Dennis K. Kade, Thomas Holzman (argued) Attys., U.S. Dept. of Labor, Washington, D.C., for respondent Secretary of Labor.
 
 
 3
 Petition for Review of an Order of the Occupational Safety and Health Review Commission.
 
 ON PETITION FOR REHEARING
 
 4
 Before GODBOLD, MORGAN and HENDERSON, Circuit Judges.
 
 
 5
 LEWIS R. MORGAN, Circuit Judge.
 
 
 6
 Petition for rehearing was duly filed by petitioner, Cleveland Consolidated, Inc., supported by its brief. The respondents, Occupational Safety and Health Review Commission and the Secretary of Labor, filed a motion to correct the decision previously issued.
 
 
 7
 The petition for rehearing is granted, and the original panel opinion dated April 17, 1981, is withdrawn. The following opinion is substituted in lieu thereof.
 
 
 8
 Cleveland Consolidated, Inc. (hereinafter the Company) petitions this court to review the order of the Occupational Safety and Health Review Commission (hereinafter the Commission) entered against it on September 10, 1979, finding it in serious violation of the Occupational Safety and Health Act of 1970[1] (hereinafter the Act). The petition challenges the findings of the Administrative Law Judge (hereinafter ALJ) that the company violated 29 C.F.R. § 1926.105(a), a regulation requiring the use of safety nets when workers are exposed to heights of over 25 feet and cannot use other means of safety protection, and 29 C.F.R. § 1926.450(a)(5), a regulation requiring safety features on "fixed ladders." Finding substantial evidence in the record to support the decision of the ALJ, we affirm.
 
 I. FACTS
 
 9
 Cleveland Consolidated, Inc., a corporation engaged in the business of steel construction and erection, contracted with Georgia Power Company to construct a balanced draft conversion as an environmental control at the power plant in Hammond, Georgia. This 110-foot structure was to be built of hundreds of tons of ductwork and supporting structural steel constructed around two smokestacks at the power plant. The construction method utilized by the Company was to build the structure in 30-foot layers, installing vertical columns and their supporting diagonal and horizontal beams to a height of 30 feet and then installing the required ductwork within the center of the structure to the same height. The builders repeated this process of construction with some minor variations for each additional 30 feet of elevation. The construction process was a difficult one, complicated by certain physical structures[2] existing on the construction site that created obstacles to construction.
 
 
 10
 The Company provided safety belts for the workers and required that they be worn by the stationary ironworkers erecting the steel structure. However, two of the ironworkers, known as connectors, were unable to use safety belts for fall protection because their work required substantial mobility. For short periods of time, these connectors worked without any fall protection other than their own skill at the job. On September 20, 1977, during the latter phases of construction, one of the connectors fell approximately 65 feet to his death. In response to the fatal accident, a compliance officer from the Occupational Safety and Health Administration (hereinafter OSHA) conducted an inspection of the work site. The officer issued citations against the Company, alleging, inter alia,[3] serious violations of Section 5(a)(2) of the Act,[4] and more particularly, violations of 29 C.F.R. § 1926.105(a)[5] and 29 C.F.R. § 1926.450(a)(5).[6] The citation alleged (1) that the Company had failed to provide safety nets under the ductwork and supporting steel where ironworkers were moving about at up to 110 feet above the ground without fall protection and (2) that a 100-foot access ladder had areas of more than 90 degree pitch and did not have a cage, well, safety climbing device or landing platforms. For these violations, penalties were assessed in the amounts of $720.00 and $604.00 respectively. The Company filed a timely notice of contest to the citations, and the Secretary responded with a formal complaint. A three-day hearing before Administrative Law Judge David G. Oringer began on November 28, 1978. After the presentation of evidence and the filing of briefs, the ALJ issued his decision, affirming both citations and proposed penalties. In his decision the ALJ found that fall protection was not provided, but under the method of construction utilized by the Company, none could have been used. However, the judge determined, based on testimony of the Secretary's expert witness, that an alternative method of construction could have been used that would have permitted the use of safety nets. Thus, compliance was commanded under the Act. In regard to the "fixed ladder" violations, the ALJ found that the ladder in question was indeed a "fixed ladder" within the meaning of the regulation and that it did not comply with the ANSI standards[7] mandated by the Act. In addition, the judge denied the Secretary's motion to amend the pleadings under Rule 15 of the Federal Rules of Civil Procedure to include a violation of Section (5)(a)(1) of the Act.[8]
 
 
 11
 The Company filed a timely petition for discretionary review with the Commission; however, no Commissioner directed review and the decision of the ALJ became the final order of the Review Commission on September 10, 1979. The Company now seeks review of that order in this court pursuant to 29 U.S.C. § 660(a), permitting judicial review of a final order of the Commission. Concerning the safety nets violation charged under 29 C.F.R. § 1926.105(a), the Company's petition challenges 1) whether alternative methods of construction other than those actually employed can be required under 29 C.F.R. § 1926.105(a), 2) whether, if alternative methods are required, the testimony of the Secretary's expert as to alternative methods of construction was admissable, 3) whether the fact that complete compliance cannot be achieved requires the application of the affirmative defense of impossibility, and 4) whether the evidence as a whole justified the decision of the ALJ. Regarding the "fixed ladder" violations under 29 C.F.R. § 1926.450(a)(5), petitioner does not question the fact that the violations existed, but rather challenges, as below, whether the ladder in question was a "fixed ladder" within the meaning of the regulations.
 
 II. THE SAFETY NETS VIOLATION
 
 12
 As indicated above, petitioner raises several issues in regard to the safety nets violation. Before we consider the merits of any of these issues, however, we must address the Secretary's argument that this court does not have jurisdiction to entertain the claim of the Company that alternative methods of construction are not required under 29 C.F.R. § 1926.105(a). The Secretary, citing McGowan v. Marshall, 604 F.2d 885 (5th Cir. 1979), urges that the argument was not adequately raised before the Commission, and therefore cannot be decided by this court. Specifically, the Secretary argues that the precise issue raised by the petitioner before the Court of Appeals was not addressed in its petition for review to the Commission, and therefore cannot be heard.
 
 
 13
 McGowan, along with similar cases in other circuits,[9] stands for the proposition that a petitioner to the Court of Appeals must first petition the Commission for administrative review or at least assist the Commission in its review before the court has jurisdiction to consider its appeal. The court in McGowan found support for its position within the language of 29 U.S.C. § 660(a),[10] which requires that objections be urged before the Commission before they may be considered by a court. The court construed the language of section 660(a) to mean that objections must be urged before the Review Commission itself as well as the ALJ, stating "that proceedings targeted toward a Commission, not those before the administrative law judges, are the predicate to judicial review." McGowan v. Marshall, supra, 609 F.2d at 890. That language, along with other language indicating the importance of review by the Commission to ensure consistent and expert administration, tends to support the Secretary's position. However, we need not require as a general rule under McGowan that an issue must be specifically addressed in the petition for review before it can be heard. McGowan requires simply that the Commission be alerted to the issues and have the opportunity to pass on them before a court begins its review of the administrative process. Broad language in a petition for review might be sufficient to satisfy this requirement, and indeed even less has been recognized by the Commission as sufficient. See Hullenkremer Constr. Co., 1978 OSHD P 22,568 (1978); Genco, Inc., 1978 OSHD P 23,061 (1978). Where an issue is evident from the record below, this court will retain its jurisdiction to hear the appeal.
 
 
 14
 In two recent cases the Commission, relying on 29 C.F.R. § 2209.92(c), refused to reach issues not specifically raised in the petition for review or directed for review by the Commission. See Gannett Rochester Newspaper Corp. and Rochester Newspaper Pressman's Union No. 36, 3 Empl. Safety and Health Guide (CCH) P 25,323 at p. 31,383, n. 4 (1981), Austin Bldg. Co., 1980 OSHD P 24,839 at p. 30,621, n. 1 (1980). The cited regulation provides that "(w)hen a petition for discretionary review is granted, review shall be limited to the issues specified in the petition, unless the order for review expressly provides differently." 29 C.F.R. § 2200.92(c). The Secretary suggests that the regulation requires a ruling by this court that issues not specifically raised in the petition are waived. However, we refuse in this case to apply the Commission's regulation to prohibit review. The regulation allows for discretion by the Commission to direct review of an issue not specified in the petition, and thus when the Commission grants review it may reach any issue found in the record below. However, when the Commission denies review, the Secretary's position would require that an issue not specifically raised in the petition is forever lost. At the time of the Company's petition for review in this case, the Commission maintained a policy of liberal interpretation of petitions for review, and in apparent reliance on that policy, the Company deemed its petition sufficient to preserve the issue. Because the issue is contained in the record below, we will assume for purposes of this appeal that the issue was sufficiently raised, and so assuming, we turn to the merits of the issue whether alternative methods of construction are required under 29 C.F.R. § 1926.105(a).
 
 
 15
 In support of its position the Company relies on language by the Commission in Issacson Structural Steel Co., 1974-1975 OSHD P 19,592 (1975), stating that "neither § 1926.28(a) nor § 1926.105(a) requires an alternative means of performing the work." Id. at p. 23,298. On the basis of other Commission cases which indicate that alternative methods may be required in order to comply with OSHA regulations, however, we find that this statement in Issacson is not an accurate statement of the law.
 
 
 16
 A prima facie violation of section 1926.105(a) is established if the Secretary can show that employees were subject to falls of twenty-five feet or more and none of the safety devices listed in the standard were utilized. Havens Steel Co., 1978 OSHD P 22,689 (1978), aff'd. 607 F.2d 493 (D.C. Cir. 1979). After the Secretary establishes a prima facie case, the "employer may affirmatively defend by establishing that it is impossible to erect safety nets, that safety nets would make performance of the work impossible or result in a greater hazard." Id. at p. 27,385. The issue in this case involves the employer's burden when raising the affirmative defense of impossibility. That issue was addressed in Ace Sheeting & Repair v. Occupational Safety & Health Review Comm'n, 555 F.2d 439 (5th Cir. 1977), where the court held that, when dealing with a specific regulation, the employer rather than the Secretary bears the burden of showing that compliance with the regulation was not feasible under the particular circumstances.[11] Although indicating that the employer had the burden, the decision did not clearly indicate whether this burden extended to countering any feasible suggestions by the Secretary, and that is the precise issue which we must now consider.
 
 
 17
 In Taylor Bldg. Assoc., 1977-78 OSHD P 21,592 (1977), the Commission reversed a finding by the ALJ that it was impossible to comply with regulation 29 C.F.R. § 1926.750(b)(1)(ii) requiring safety nets on multi-story steel erection over twenty-five feet, and still perform the construction. In that case the Commission held that alternative procedures of construction, i. e., using a derrick instead of a crane, may be required in order to comply with the OSHA regulations. Under circumstances similar to the present case, a witness for the Secretary "testified that respondent could have used an erection derrick instead of a crane, and that as the job progressed, a net could have been installed after the erection of each vertical column " Id. at p. 25,910. The Commission went on to say that "(w)hile this process would have probably added to the cost and difficulty of performing the work, and would have required a change in working techniques, it would not have made the work impossible." Id. Thus, in a case with facts much like the present case the Commission interpreted a regulation strikingly similar to § 1926.105(a) to require alternate work techniques. See also Martin-Tomlinson Roofing Co., 1980 OSHD P 24,167 (1980), where the Commission held that compliance with regulation 29 C.F.R. § 1926.28(a) was not impossible where the employer failed to counter the Secretary's suggestion of alternative feasible methods of compliance. This case and the general trend of other Commission cases seem to indicate that the Commission at this time requires alternative methods of construction if necessary, and possible, to comply with the OSHA regulations. Although the Commission is required to explain any change in policy,[12] "one inconsistent precedent does not entitle an agency litigant to demand that the board ignore prior and subsequent holdings which have followed a uniform approach." N.L.R.B. v. Sunnyland Packing Co., 557 F.2d 1157, 1160 (5th Cir. 1977). The statement in Issacson, supra, was issued without explanation, and the petitioner has cited no other cases which follow its language.
 
 
 18
 Although the Commission has never expressly set out the reasons why alternative methods of construction may be required, those reasons are implicit in the decisions and inherent in the nature of the specific regulations. The regulation in question, 1926.105(a), specifically dictates the employer's duty to supply fall protection. The duty to consider alternative methods of construction which permit compliance with the regulation is merely a corollary of the duty to comply. The petitioner has attempted to characterize this duty as a burden requiring changes in methods of construction; however, that characterization ignores the employer's initial responsibility to comply with the OSHA regulations. If an employer were permitted to choose any method of construction, and subsequently argue that compliance with OSHA regulations was impossible because of the method of construction chosen, then the regulations could be undermined in many instances. The broad, remedial purposes of the Act prohibit such a result. See Brennan v. Southern Contractors Serv., 492 F.2d 498, 501 (5th Cir. 1974) If the Secretary establishes a prima facie violation, and the employer asserts the affirmative defense of impossibility, the Secretary may certainly counter that defense by suggesting alternative methods of construction by which compliance with the regulation would have been possible. The ALJ's determination of whether compliance was indeed possible is a factual decision that must be affirmed if supported by substantial evidence. 29 U.S.C. § 660(a).
 
 
 19
 As to the remaining claims of the Company pertaining to the safety nets violations, we are bound by the ALJ's findings of fact, including his judgments of credibility supporting those facts, if they are supported by substantial evidence on the record considered as a whole. See, e. g. Marshall v. West Point Pepperell, Inc., 588 F.2d 979 (5th Cir. 1979). The findings of fact must be upheld if properly supported even if this court would reach a different result de novo. See H. B. Zachry Co. v. Occupational Safety & Health Review Comm'n., 638 F.2d 812, 815 (5th Cir. 1981); Accu-Namics, Inc. v. Occupational Safety & Health Review Comm'n, 515 F.2d 828, 834-35 (5th Cir. 1975), cert. denied, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976).
 
 
 20
 Concerning the admissibility of the Secretary's expert's testimony, the ALJ specifically found in his decision that the Secretary expert's, a safety construction engineer, was sufficiently qualified indeed very well qualified to testify as to alternative methods of construction. Substantial evidence in the form of the expert's resume and his testimony concerning his experience support the finding that he was qualified to testify. The Company additionally argues that the witness did not take into consideration restrictions of space affecting the actual construction site. The record reveals that the expert visited the construction site, observing the procedures utilized by the Company. Evidence of this visit supports the ALJ's conclusion that the witness adequately considered the obstacles present at the construction site. Expert testimony offered by the Company need not be accepted by the agency,[13] and the ALJ's credibility determination in favor of the Secretary's expert over the Company's witnesses cannot be overturned in this instance. See N. L. R. B. v. Dixie Gas Co., 323 F.2d 433 (5th Cir. 1963).
 
 
 21
 In a third claim the Company argues that it established as an affirmative defense to the violation the defense of impossibility of compliance. In this argument the Company assumes the feasibility of the Secretary's expert's method of construction, but argues that even under his method, the Company could not absolutely comply with the regulation. This argument is without merit in light of the remedial purposes of the Act. Although the impossibility defense certainly remains viable, it should not be applied in such a manner as to permit an employer to avoid the use of any protection available. A technical defense, where some means of protection is available, is not an excuse for disregarding safety precautions. The Secretary's view, shared by the Commission, requires limited compliance where it furnishes some protection, even if exact compliance is not possible. See Martin-Tomlinson Roofing Co., Inc., 1980 OSHD P 24,167 at pp. 29,381-382 (1980); J. P. Conway, Inc., 1979 OSHD P 23,869 at p. 28,955 (1970); Kelly Constr. Serv. 1976-77 OSHD P 20,925 at p. 25,131 (1976); See also 29 U.S.C. § 651; Marshall v. Southwestern Ind. Contractors & Riggers, Inc., 576 F.2d 42, 45 (5th Cir. 1978); Brennan v. Southern Contractors Serv., supra, 492 F.2d at 501. This view is entitled to substantial deference by the court.
 
 
 22
 The Company's fourth and final argument regarding the safety nets violation raises an impossibility of performance claim. However, the Company bears the heavy burden of establishing that substantial evidence did not exist to support the finding of the ALJ regarding the alternative method of construction proposed by the Secretary's expert. As noted previously, the Commission specifically found against the Company on these factual issues based on his determinations of credibility. These findings are binding on the court in the absence of "uncontrovertable documentary evidence of physical facts" which refute them. N. L. R. B. v. Dixie Gas, Inc., supra, 323 F.2d at 437. Substantial evidence existed to support the findings of the ALJ, and the agency was not required to accept the testimony of the Company's witnesses. See United States Steel Corp. v. Occupational Safety & Health Review Comm'n, 537 F.2d 780, 783 (3rd Cir. 1976); Minnesota Mining and Mfg. Co. v. Berwick Indus. Inc., 532 F.2d 330 (3d Cir. 1976.)
 
 III. THE "FIXED LADDER" VIOLATIONS
 
 23
 The Company argues in regard to the "fixed ladder" violation that their ladder in question was not a "fixed ladder" within the meaning of the ANSI A14.3-1956, Safety Code for Fixed Ladders, as adopted by 29 C.F.R. § 1926.450(a)(5). Again, the standard on review is whether the finding of the ALJ is supported by substantial evidence on the record considered as a whole. We find that the ALJ did not err in deeming the ladder a "fixed ladder" within the meaning of the regulation. Although the Company offered as its witness the head of the ANSI Fixed Ladder Committee to testify as to the meaning of the provision, the ALJ refused to credit his testimony. Because an agency may decline to accept the testimony of an expert, his action was permissible. The standard pertains to ladders that are "permanently attached," and the Secretary suggested that a ladder welded to the structure, even if temporarily welded, was such a ladder. The ALJ agreed with the interpretation of the Secretary, and where the Secretary and the Commission agree on a reasonable interpretation, the courts owe substantial deference to that interpretation. Floyd S. Pike Electrical Contractor, Inc. v. Occupational Safety & Health Review Comm'n, 576 F.2d 72, 75, n. 4 (5th Cir. 1978); Clarkson Const'n., Inc. v. Occupational Safety & Health Review Comm'n, 531 F.2d 451, 457 (10th Cir. 1976); Budd Co. v. Occupational Safety & Health Review Comm'n, 513 F.2d 201, 205 (3d Cir. 1975). Furthermore, the determination by the ALJ that the ladder was permanently affixed, i. e., welded to the structure, may be viewed as a factual finding supported by substantial evidence.
 
 
 24
 Based on the foregoing reasons, the decision of the ALJ and its adoption by law by the Commission is
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C. § 651 et seq., specifically section 5(a)(2), 29 U.S.C. § 654(a) (2). A serious violation is defined in section 17(k) of the Act, 29 U.S.C. § 666(j), as existing
 if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
 
 
 [2]
 The construction site included two smokestacks, one of which was 850 feet in height, around which the ductwork and structural steel was to be erected. In addition, there were two permanent buildings, power lines running from the power plant to utility poles, a road next to the construction site, liquid storage tanks, and a concrete platform adjacent to one section of the project
 
 
 [3]
 The officer initially charged in a second citation two non-serious violations of the Secretary's standards. However, prior to trial the Secretary moved to reduce the allegation of a non-serious violation under 29 C.F.R. § 1926.550(a)(8) to a de minimis violation. The respondent moved to withdraw his notice of contest to the allegation of violation of 29 C.F.R. § 1926.152(e) (2). Both motions were granted, thus disposing of the non-serious violations. The parties stipulated that if the serious violations were proved, the penalties proposed were reasonable
 
 
 [4]
 29 U.S.C. § 654(a)(2)
 Duties of Employers and Employees
 (a) Each employer
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
 (2) shall comply with occupational safety and health standards promulgated under this chapter.
 
 
 [5]
 29 C.F.R. § 1926.105(a) provides that:
 Safety nets shall be provided for work places of more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.
 
 
 [6]
 29 C.F.R. § 1926.450(a) provides that:
 Fixed ladders shall be in accordance with the provisions of the American National Standards Institute, A14.3 1956 Safety Code for Fixed Ladders.
 The pertinent provisions of the ANSI standards provide as follows:
 Section 6.2 LANDING PLATFORMS. When ladders are used to ascend to heights exceeding 20 feet (except on chimneys), landing platforms shall be provided for each 30 feet of height or fraction thereof, except that, where no cage, well or ladder safety device is provided, landing platforms shall be provided for each 20 feet of height or fraction thereof. Each ladder section shall be offset from adjacent sections. Where installation conditions (even for a short, unbroken length) require that adjacent sections be offset, landing platforms shall be provided at each offset.
 Section 7.4 PITCH GREATER THAN 90 DEGREES. Ladders having a pitch in excess of 90 degrees with the horizontal shall not be permitted.
 
 
 [7]
 See note 6 supra
 
 
 [8]
 This motion was an attempt to amend the citation and pleadings to conform to the evidence at trial. The motion was for the purpose of allowing testimony concerning the failure to use temporary floors as safety precautions. The ALJ ruled that the pleadings specifically stated that the use of temporary floors and other safety precautions was impractical, and because amendment after trial would be unfair to the defense of the respondent, the ALJ denied the motion
 
 
 [9]
 Keystone Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n, 539 F.2d 960, 963-64 (3rd Cir. 1976); Felton Constr. Co. v. Occupational Safety & Health Review Comm'n, 518 F.2d 49, 50 (9th Cir. 1975). Cf. RMI Co. v. Secretary of Labor, 594 F.2d 566 (6th Cir. 1979), Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683 (9th Cir. 1978), Brennan v. Occupational Safety & Health Review Comm'n, 511 F.2d 1139 (9th Cir. 1975) (court permitting review of issues not urged before the Commission in "extraordinary circumstances")
 
 
 [10]
 29 U.S.C. § 660(a) provides in pertinent part as follows:
 No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.
 
 
 [11]
 The court's reference to proving the feasibility of compliance "under the particular circumstances" could arguably be interpreted to mean "under the particular method of construction chosen." However, we refuse to adopt that interpretation based on our discussion, infra. The phrase "particular circumstances" refers to the restrictions of the construction site, not the method of construction utilized. An employer has a duty to plan a method of construction that enables him to comply with OSHA regulations if possible
 
 
 [12]
 See Atchison, Topeka & Sante Fe Ry. v. Wichita Board of Trade, 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); N.L.R.B. v. Sunnyland Packing Co., 557 F.2d 1157 (5th Cir. 1977)
 
 
 [13]
 See United States Steel Corp. v. Occupational Health & Safety Review Comm'n, 537 F.2d 780, 783 (5th Cir. 1976)