**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 20, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-60642
Summary Calendar

_____

AUSTIN BRIDGE & ROAD INC.,

Petitioner,

versus

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
ELAINE CHAO, SECRETARY, DEPARTMENT OF LABOR,

Respondents.

_____

Petition for Review:
Occupational Safety & Health Review Commission
Cause No. 02-0983

_____

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

In this appeal, the petitioner, Austin Bridge & Road, Inc. (Austin Bridge), challenges a decision by Occupational Safety and Health Review Commission (the Commission). In the decision, the Commission determined Austin Bridge violated section 1926.550(b)(2) of the Occupational Safety and Health Act (the Act), and assessed a penalty of $4,500.00. After considering the

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

parties' arguments on appeal, this Court affirms the Commission's decision.

## Factual Background

This appeal arises from a construction accident involving the over-loading of a crane during an attempt to move a large concrete beam. Austin Bridge used the crane to lift a beam which weighed thousands of pounds more than the crane could sustain. At the time of the incident, Austin Bridge did not know the actual weight of the beam. But as the crane hoisted the beam from the ground, the beam swung out and caused the crane to overturn.

After investigating the accident, the Secretary of Labor (the Secretary) issued a citation against Austin Bridge for violating the OSHA by exceeding the rated load capacity of the crane. Austin Bridge contested the citation, and the Commission conducted a hearing. After the hearing, the administrative law judge (ALJ) determined Austin Bridge failed to act with reasonable diligence by not ascertaining the actual weight of the beam. The ALJ found the circumstances surrounding the particular lift placed Austin Bridge on notice that the beam was likely to be too heavy for the single crane. Austin Bridge challenges that determination in this appeal.

## Standard of Review

This Court reviews the Commission's findings of fact under

a substantial evidence standard, affording deference to the ALJ's determination upon hearing the evidence.[2]  This Court is "bound by the ALJ's findings of fact, including his judgments of credibility supporting those facts, if they are supported by substantial evidence on the record considered as a whole."[3]  A reviewing court upholds an ALJ's properly supported findings of fact, even if that particular reviewing court would reach a different result de novo.[4]  A substantial evidence inquiry employs an objective standard.  "For factual determinations, the Supreme Court has defined substantial evidence as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[5]  This Court regards questions of law with a similarly deferential standard to the ALJ and Commission's decisions.  This Court can only overturn a Commission's conclusions of law if those conclusions are "arbitrary, capricious, and abuse of discretion or otherwise not in

---

[2]*See* 29 U.S.C. § 655(f); *Cleveland Consol., Inc. v. Occupational Safety and Health Review Comm'n*, 649 F.2d 1160, 1167 (5th Cir. 1981).

[3]*Cleveland Consol.*, 649 F.2d 1160 at 1167.

[4]*See id.*

[5]*Nat'l Grain and Feed Ass'n v. Occupational Safety and Health Admin.*, 866 F.2d 717, 728 (5th Cir. 1989), *citing Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 641-642 (1980).

accordance with the law."[6]

**Whether Austin Should Have Known the Crane Was Overloaded**

On appeal, Austin Bridge maintains the ALJ improperly allocated the burden of proof in determining whether Austin Bridge violated the OSHA. In particular, Austin Bridge contends the ALJ focused on facts Austin Bridge failed to prove rather than on what the Secretary actually proved.

Section 1926.550(b)(2) of the OSHA provides that "[a]ll crawler, truck, or locomotive cranes in use shall meet the applicable requirements for design, inspection, construction, testing, maintenance, and operation as prescribed in the ANSI B30.5-1968, Safety Code."[7] To comply with this section, "[n]o crane shall be overloaded beyond the rated load."[8] To prove a violation of these crane use regulations, the Secretary had to prove (1) the cited standard applied, (2) there was a failure to comply with the cited standard, (3) employees had access to the violative condition, and (4) the cited employer either knew or could have known of the condition with the exercise of reasonable diligence.[9] Because the first three elements of a violation are

---

[6]*See Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 426-27 (5th Cir. 2001).

[7]29 C.F.R. § 1926.550(b)(2)(2003).

[8]ANSI B30.5-1968 Safety Code for Crawler, Locomotive and Truck Cranes ¶ 5-3.2.1a.

[9]*See Walker Towing Corp.*, 14 BNA OSHC 2072, 2074, No. 87-1359, 1991-93 CCH OSHD ¶ 29239 (Feb. 15, 1991).

4

not disputed on appeal, this Court must consider whether substantial evidence supports the ALJ's determination that Austin Bridge should have investigated the exact weight of the beam before attempting the lift and whether the ALJ's conclusion that Austin Bridge violated safety regulations was arbitrary and capricious. After reviewing the evidence, the Court concludes substantial evidence supports the ALJ's determination that circumstances placed Austin Bridge on notice of the crane's over-loaded condition and that Austin Bridge should have investigated the weight of the concrete.

During the hearing on the violation, the Secretary's expert, Leon Johnson, testified that in calculating the weight of construction beams, an exact weight cannot be determined because "no one is quite sure just how much of what particular aggregate content of the concrete is in there, how much rebar is actually in there, and whether they maintained their closeness to tolerances." Johnson explained that a person working within the construction industry would know that these calculated weights are not the exact weight of the beam. Johnson also testified that the crane's lifting capacity was 78,860 pounds. He explained that based on the calculated weight of the beam and the weight of the rigging used during the lift, the total calculated weight of the lift was just over 98 percent of what the crane could sustain. Johnson opined that an employer who determines a planned lift was within 98 per cent of the maximum capacity of

the crane should "make sure he knows exactly what the load is to weigh and he needs to know that the crane is exactly level and, if the crane has to travel, will travel on a level roadbed or a level mats [sic] and making sure that within – when you're that close to 100-percent capacity, everything has got be just exactly right." Johnson estimated the crane was 102 per cent overloaded when the lift began and that the overloading increased as the crane swung the beam towards the lifted position.

Douglas Walker, a crane operator dispatched to the Austin Bridge job site, confirmed Johnson's testimony about the weight of beams. Walker testified that beams often weigh more than even the manufacturing estimate states. Walker stated that he does not normally rely on the manufacturer's estimate of beam weight because "we don't take the risk on our cranes up to the maximum capacity. We leave ourself [sic] a little bit of cushion there because we know that those weights can vary."

In addition, Mike Pettit, an engineering manager for Austin Bridge, testified that prior to the accident, he estimated the weight of the beam as 74,000 pounds.[10] When questioned by the ALJ, Pettit admitted that although a bill of lading is usually delivered with a beam, he did not rely on the bill of lading to calculate the weight of the beam. Pettit agreed that it would be

---

[10]The way bill of lading, obtained by Austin Bridge after the accident, indicated the beam weighed 77,690; the beam actually weighed a little over 78,000 pounds.

prudent to look at a bill of lading that reflected the actual weight of a beam. Pettit testified, however, that he did not think it unusual to calculate a beam's weight without looking at a bill of lading.

Based on the testimonies of these witnesses, a reasonable mind could accept the ALJ's conclusion that Austin Bridge was on notice that further investigation into the true weight of the beam was necessary.[11] The evidence shows the calculated weight was dangerously close to the crane's maximum capacity. Although Austin Bridge claims the ALJ improperly placed the burden upon it to disprove the Secretary's assertions that due diligence could have produced discovery of the under-estimated weight, the evidence at the hearing conclusively showed Austin Bridge made no attempt to find the true weight of the beam prior to the lift. Austin Bridge relied solely on the lift plan, even after this plan involved a mere two percent margin of error for the crane's capacity.

Testimony from all witnesses involved in the construction project stated that bills of lading usually accompany these beams upon delivery. The evidence indicates these bills of lading contain the manufacturer's calculated weight. Testimony concerning the way bill, a type of bill of lading from the supplier, explained that these bills of lading contain the actual

---

[11]*See Nat'l Grain and Feed Ass'n*, 866 F.2d at 728.

7

weight of the beam.  Thus, the evidence at trial established the availability of information about the true weight of the beam had Austin Bridge attempted to investigate.

Even though the ALJ referred to a witness that Austin Bridge "failed to call," the ALJ observed the Secretary's burden to establish that due diligence would have produced this information.  The Secretary met this burden by proving a lack of certain behaviors that the ALJ agreed a reasonable employer is expected to assert, such as attempting to locate the missing bills or otherwise "ascertain the accuracy of the engineered weight."  The language used in the ALJ's opinion, citing this lack on Austin Bridge's part, merely pointed out Austin Bridge's lack of rebuttal evidence, rather than mis-allocating the Secretary's burden of proof.  Thus, substantive evidence supports the ALJ's determination that due diligence by Austin Bridge required finding the true weight of the beam.[12]  Because substantial evidence supports the ALJ's findings of notice and lack of due diligence on the part of Austin Bridge, the ALJ's conclusion that Austin Bridge violated OSHA was therefore not arbitrary or capricious.[13]  For these reasons, the Court AFFIRMS the decision of the Commission.

AFFIRMED.

---

[12]*See* 29 U.S.C. § 655(f); *Walker Towing Corp.*, 14 BNA OSHC at 2074.

[13]*See Trinity Marine Nashville*, 275 F.3d at 426-27.