Ray MARSHALL, Secretary of
Labor, Petitioner,

v.

SOUTHWESTERN INDUSTRIAL CONTRACTORS AND RIGGERS, INC. and Occupational Safety and Health Review Commission, Respondents.

No. 77–2471
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 5, 1978.

Carin A. Clauss, Sol. of Labor, Allen H. Feldman, Asst. Counsel for App. Lig., John A. Bryson, John A. Amodeo, Attys., U. S. Dept. of Labor, Washington, D. C., for petitioner.

Ray H. Darling, Jr., Executive Sec., Benjamin W. Mintz, Associate Sol. of OSHRC, Allen H. Sachsel, App. Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Stephen B. Tatem, Jr., Scott, Hulse, Marshall & Feuille, El Paso, Tex., for S. W. Ind. Contractors & Riggers.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

GOLDBERG, Circuit Judge:

This case marks the fourth appearance before this court of an Occupational Safety & Health Act safety regulation relating to

---

* Rule 18, 5 Cir.; *See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

the use of safety nets to protect workers from falls. The regulation reads, in pertinent part,

> Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

29 C.F.R. 1926.105(a).

The instant case arises from construction activity by respondent, Southwestern Industrial Contractors and Riggers, Inc. ("Southwestern" or "the company") at the Sheridan overpass on Interstate Highway 10 in El Paso, Texas. On July 22, 1975, at the time of the OSHA inspection, Southwestern was engaged in "hanging the beams," that is, lifting into place and securing 80 foot long pre-cast concrete beams upon which the actual road surface was to be laid. Two ironworkers employed by Southwestern had the specific task of securing the beams. To perform this function, the employees worked from adjacent beams, 25–30 feet from the ground, bolting angle irons and placing jacks between the beams at approximately ten foot intervals along the 80 foot length of the beams. While the actual bolting was done from a stooped or sitting position, the employees were required to walk along the beams both to move from one bracing location to the next and to receive equipment from the ground and transport it along the beams.

The two employees were supplied with safety belts and six foot lanyards, or safety lines. When working in stationary positions, the employees attached the lanyards to their safety belts, passed them through steel rebars embedded in the concrete beams, and doubled them back to reconnect to the safety belts. Thus, when in use, the lanyards moored the employees within three feet of the beams. The employees had to unhook the lanyards whenever the job required them to stand or walk along the beams. No safety net or other protec-

tive device was employed; thus, when the lanyards were unhooked,[1] the workers were totally unprotected from falls of 25–30 feet.

Following the OSHA inspection, the Secretary of Labor issued Southwestern a citation alleging a serious violation of § 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2), for failure to comply with the safety standard, 29 C.F.R. 1926.105(a), in that "safety nets were not provided or installed where other protection was not practical at the Sheridan overpass where two employees were exposed to the hazard of falling . . . more than 25 feet . . .." The Secretary also ordered immediate abatement of the condition and issued a Notification of Proposed Penalty in the amount of $500. Southwestern timely contested the citation and proposed penalty and a hearing was held before an administrative law judge ("ALJ") on December 2, 1975.

The ALJ, relying heavily on a decision of the Eighth Circuit, *Brennan v. OSHRC, and Ron M. Fiegen, Inc.,* 513 F.2d 713 (8th Cir. 1975), held that the Secretary had not established that Southwestern had failed to comply with the cited standard and accordingly vacated the citation and proposed penalty. Following issuance of this order, Commissioner Moran of the Occupational Safety and Health Review Commission ("OSHRC" or "the Commission") directed *sua sponte* that the ALJ's decision "be reviewed for error" by the full Commission. The Secretary later petitioned for review of specific errors in the ALJ's decision. The Commission declined "to pass upon, modify or change the Judge's decision" and accorded the ALJ's order "the significance of an unreviewed Judge's decision." The Secretary now petitions for review under 29 U.S.C. § 660(b). We reverse.

The first case in this circuit to consider safety rule 1926.105(a) was *Brennan v. OSHRC and Bounds,* 488 F.2d 337 (5th Cir. 1973). In that case the court affirmed a

---

1. One employee testified that he was tied off about one-half of the time. The company's safety director conceded that the men were not always tied off as the construction work re-

quired them to be mobile. While unable to state what part of the time they would be unhooked, the safety director thought the ironworkers would be tied off more often than not.

decision of the Commission holding that the employer's failure to utilize a safety net was not in violation of the safety rule where both affected employees were working on surfaces construed by the Commission as "permanent flooring." The court, in approving the Commission's determination that "the cited standard is inappropriate to the factual situation," focused its analysis on the regulation's use of the "imprecise term 'impractical' ":

> We read the Commission's interpretation of the regulation as equivalent to finding that if the ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts are used, then a safety net is not required by 1926.105. The term "impractical" is simply not precise enough to be synonymous either with absence of use of the other devices or with ineffective use of them.

*Id.* at 338. The court declined in that case to delineate the respective rights, powers, duties, and responsibilities of the Secretary of Labor and the OSHRC, finding such a determination unnecessary to its decision insofar as "[t]he fault lies in the wording of the regulation."

The safety regulation next appeared in *Brennan v. Southern Contractors Service and OSHRC,* 492 F.2d 498 (5th Cir. 1974). In that case, the employer argued, and the Commission held, "that where the use of one of the safety devices listed in this regulation is practical, then resort to safety nets is not required even though the practical device is not in fact utilized by the employer." *Id.* at 499 (note omitted). The Secretary then petitioned for review.

The *Southern Contractors* court reached an issue reserved in *Bounds,* holding that since the Secretary of Labor is authorized to promulgate regulations, "his interpretation is entitled to great weight," *id.* at 501, and "is controlling as long as it is one of several reasonable interpretations, although it may not appear as reasonable as some other." *Id.* (citations omitted). While acknowledging the ambiguity inherent in the term "impractical," the court held that "[i]n view of the salutary purpose of the . . . Act, we cannot conclude that the ambiguity . . . is so fatal as to warrant condemnation of the Secretary's interpretation of the regulation as unreasonable." *Id.* The court distinguished *Bounds,* finding significance in the Commission's interpretation of the regulation in that case

> as equivalent to finding that if ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts *are used,* then a safety net is not required by 1926.105.

*Id.* at 501 (emphasis added by the *Southern Contractors* court).

*Southern Contractors* was held to be controlling in a subsequent Fifth Circuit case, *Brennan v. Verne-Woodrow Company and OSHRC,* 494 F.2d 1181 (5th Cir. 1974), in which the court overturned an OSHRC decision adverse to the interpretation urged by the Secretary.

We believe the same result is required here. In contrast to the situation in *Bounds, supra,* here the alternative safety devices, the safety belts and lanyards, were not and could not be used during a substantial portion of the work day. Each time an employee found it necessary to stand up, to move to a new work position, or to receive or transport equipment along the beam, that employee was completely unprotected from a fall of 25–30 feet. While we recognize that the Secretary's choice of language in regulation 1926.105 could have been more precise, we believe the Secretary's interpretation of the regulation as it applies to the facts of this case is "one of several [possible] reasonable interpretations." *Southern Contractors, supra,* at 501. We cannot reject as unreasonable or inconsistent with the wording of the safety regulation the Secretary's statement that a "safety belt is only *used* as a safety device when it is both worn and attached by a lanyard or lifeline to a stationary object." [2] Under the rule

---

2. The company's safety director testified as follows concerning "use" of a safety belt:

> Q: So how would you define "using a safety belt"? Wearing it without it being attached, is that wearing it?

established in *Southern Contractors,* the Secretary's reasonable interpretation is therefore dispositive of this case.

We are not unaware of the Eighth Circuit's decision in *Brennan v. OSHRC and Ron M. Fiegen, Inc.,* 513 F.2d 713 (8th Cir. 1973), heavily relied on by the company and by the ALJ below. In that case, the Eighth Circuit, relying in part on our decision in *Bounds,* held that the safety net regulation as formulated "does not necessarily make illegal a failure to use safety nets where employees are working on a scaffold or temporary floor, regardless of the safety features of such a floor or scaffold." *Id.* at 715. The *Fiegen* court levelled harsh criticism at the regulation's wording, finding that it failed to convey the Secretary's meaning to those charged with construing the regulation, and urged the Secretary to amend or clarify the regulation if he "desires by this regulation to achieve certain goals which he deems consistent with the purpose" of the Act.

The *Fiegen* court went on to reject the Secretary's challenge of the OSHRC decision, holding that " . . . where the *Commission* has given the regulation an interpretation well within the plain meaning of its terms, we cannot say that the *Commission's* reading is unreasonable." *Id.* at 716 (emphasis added).

We have chosen to adopt a somewhat different approach to the respective roles of the Secretary and the Commission, *see Southern Contractors, supra,* and, viewing the instant case as factually distinguishable from *Fiegen,*[3] need not determine here whether we would adhere to the reading apparently accorded that case by the ALJ below, as holding that the regulation only requires the use, *however* ineffective, of one of the listed safety devices. Certainly a better worded regulation, as previously urged by this court and by the Eighth Circuit, would obviate any such determination and afford clearer guidance to the Commission and to employers in future cases. But for purposes of the present case, the existing regulation is sufficient. Where the safety belts were not "used" in any meaningful sense for a substantial portion of the workday, and the employees were afforded *no* protection from a dangerous fall, we are compelled by our holding in *Southern Contractors* to defer to the Secretary's reasonable interpretation that the regulation requires the use of some means of reasonably continuous fall protection. Any other result "would eviscerate the import of the regulation and flout the purposes of the enabling legislation" and would condone greater neglect rather than eliciting greater responsiveness on the part of employers. *Southern Contractors, supra,* at 501. Our interpretation of 1926.105(a) moors that regulation to the beneficent purposes of the Act. We remind the Secretary once again, however, that these worthy purposes are in danger of slipping through even the most protective judicial safety net when embodied in imprecisely worded regulations.

Reversed with directions to reinstate the citation issued by the Secretary.

REVERSED.

---

A: Wearing it and attached.
Q: There is no benefit whatsoever without attaching it; isn't that right?
A: That's true.
  It is uncontested that Southwestern's employees did not so "use" their safety belts during a significant portion of their work activities. *See* note 1 *supra.*

3. The scaffolds involved in the *Fiegen* case, while perhaps less effective than alternative safety devices, were clearly "used" to provide some continuous protection from falls.