659 F.2d 1273
 10 O.S.H. Cas.(BNA) 1057, 1981 O.S.H.D. (CCH)
P 25,733
 S & H RIGGERS & ERECTORS, INC., Petitioner,
v.
OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION and Raymond
J. Donovan, Secretary of Labor, Respondents.
STANDARD ROOFING & SHEET METAL, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond
J. Donovan, Secretary of Labor, Respondents,
S & H RIGGERS & ERECTORS, INC., Petitioner,
v.
OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION and Raymond
J. Donovan, Secretary of Labor, Respondents.
 Nos. 79-2358, 79-3319 and 80-7297.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B*
 Oct. 26, 1981.
 Stokes & Shapiro, Ira J. Smotherman, Jr., Atlanta, Ga., for petitioners.
 Dennis K. Kade, John R. Bradley, Atty., Ann D. Nachbar, Allen H. Feldman, U. S. Dept. of Labor, Washington, D. C., Anthony J. Steinmeyer, Marleigh Dover Lang, Dept. of Justice, Civil Div., Washington, D. C., for respondents.
 Petitions for Review of Orders of the Occupational Safety and Health Review Commission.
 Before GODBOLD, Chief Judge, TUTTLE and HILL, Circuit Judges.
 GODBOLD, Chief Judge:
 
 
 1
 In these consolidated cases under the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., we are again presented with the question whether an employer whose conduct is in compliance with the custom and practice of its industry may be found to have violated 29 C.F.R. § 1926.28(a),[1] the primary OSHA regulation pertaining to the provision of personal protective equipment to employees in the construction industry. We have re-examined our earlier cases on this issue, and we reaffirm our conclusion in these cases that, at least in the absence of a clear articulation by the Occupational Safety and Health Review Commission of the circumstances in which industry practice is not controlling, due process requires a showing that the employer either failed to provide personal protective equipment customarily required in its industry or had actual knowledge that personal protective equipment was required under the circumstances of the case.[2]
 
 
 2
 S&H Riggers & Erectors, Inc. is a prestress concrete[3] erection subcontractor that has been in business since 1970. Prestress concrete buildings are constructed of "tees," floor panels weighing approximately 12,000 pounds, and facia, wall panels weighing about 8,000 pounds. The panels are trucked to the site and lifted into place by crane. Once lifted into place they are held in position by the crane until welded to support pillars and beams by S&H's employees.
 
 
 3
 At the time of the inspection giving rise to the citation in No. 79-2358 (S&H I ) S&H was engaged in constructing a four-story office building. The record is unclear as to precisely what S&H's employees were doing at the time of the inspection, but it is uncontested that the compliance officer observed four employees standing within four feet of the open edge of the fourth floor without perimeter guarding (such as a guardrail) or personal protective equipment. At the hearing it was established that after S&H finished its work on each floor the general contractor erected perimeter guarding in order to comply with OSHA requirements for protection of employees in other trades. S& H's witnesses testified without contradiction that the only fall of which they were aware from the outside of a building in the prestress concrete erection industry was caused by an employee tripping over a "lifting loop" on the surface of a tee, and they also testified that in order to prevent such an accident S&H always burns the lifting loops off of tees and facia panels as soon as they have been welded in position.
 
 
 4
 Case No. 80-7297 (S&H II ) involves two citations arising out of separate inspections of two different work sites in Atlanta, Georgia. At the World Congress Center site employees of S&H were observed working near the edge of an open temporary floor some 60 feet above the ground installing facia panels without perimeter protection or personal protective equipment. At the MARTA site S&H employees were observed working at the edge of the top level of the building, again installing facia panels. When the compliance officer arrived on the site he noticed S&H's employees working without belts. When he came to their work position during his walkaround inspection, however, they were wearing the belts.
 
 
 5
 The evidence in S&H II established that at some time after the inspection in S&H I the company instituted a policy requiring its employees to wear safety belts except when the employees felt it was unsafe to do so. In practice this seems to have meant that employees performing initial tack welds holding the facia panels in position did not wear belts, while other employees who followed and applied the permanent welds were expected to wear belts.
 
 
 6
 Standard Roofing & Sheet Metal, Inc., case No. 79-3319, is a roofing and sheet metal contractor. At the time of the inspection that gave rise to this citation Standard was repairing the flat roof of a four story building. The compliance officer observed employees of Standard in the act of "scratching back" the gravel around the edge of the roof in preparation for resurfacing. The employees were not provided with any form of fall protection. "Scratching back" involves bending over at the waist and using short strokes with the claw of a claw hammer to dislodge gravel from the tar or asphalt in which it is embedded.
 
 
 7
 According to testimony of the compliance officer and of Standard's foreman, the compliance officer remarked at the time of the inspection that it was a windy day, but the two disagreed on whether it was windy enough to present a risk that a worker might be blown off the edge of the roof. No attempt was made to determine the force of the wind, and the record does not indicate whether the wind was steady or gusting.
 
 
 8
 After the inspection an officer of Standard brought safety belts and lifelines to the worksite, and the employees used them thereafter, fastening the lifelines to air conditioners and similar protrusions on the roof. Standard had previously used safety belts on a job on the roof of an 18 story building under what were described as "very windy" conditions. Standard's witnesses testified that they considered the conditions on that job to be substantially different from those on the job involved herein, but the record does not contain a detailed description of conditions on the 18-story job.
 
 
 9
 Standard had previously been cited for failure to provide safety belts to employees working on the roof of a two story building. Standard did not contest this citation and stated at the time that it had abated the alleged hazard. The record does not reflect, however, whether safety belts were actually used by Standard employees at that time.
 
 
 10
 As a result of the inspection of their work sites S&H and Standard were issued citations for alleged violations of § 1926.28(a).[4] In each case the employer timely contested the citation, 29 U.S.C. § 659(c), and the Secretary of Labor filed a formal complaint. 29 C.F.R. § 2200.33. The Administrative Law Judge in each case affirmed the citations, and the employers petitioned the Commission for discretionary review under 29 U.S.C. § 661(i) and 29 C.F.R. § 2200.91. The Commission granted review in S&H I and S&H II and issued opinions affirming the ALJs. Review was denied in Standard, whereupon the decision of the ALJ became the final order of the Commission. Each employer timely invoked the jurisdiction of this court under 29 U.S.C. § 660(a). The standard of review is the same in each case, see Fred Wilson Drilling Co. v. Marshall, 624 F.2d 38 (5th Cir. 1980). We must affirm if the decisions below are supported by substantial evidence in the record as a whole and if in accordance with law. Horne Plumbing & Heating Co. v. OSHRC, 528 F.2d 564, 567 (5th Cir. 1976).
 
 
 11
 Before turning to the orders of the Commission in these cases it is helpful to examine briefly the history of § 1926.28(a) in the Fifth Circuit. This court's struggle to define the requirements of due process in connection with broadly worded OSHA regulations began with Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230 (5th Cir. 1974), a case involving 29 C.F.R. § 1910.132(a),[5] the general industry analog to § 1926.28(a). In Ryder we rejected the employer's argument that § 1910.132(a) lacked any ascertainable standard of conduct and was therefore void for vagueness:
 
 
 12
 The regulation appears to have been drafted with as much exactitude as possible in light of the myriad conceivable situations which could arise and which would be capable of causing injury. Moreover, we think inherent in that standard is an external and objective test, namely, whether or not a reasonable person would recognize a hazard of foot injuries to dockmen, in a somewhat confined space, from falling freight and the rapid movement of heavy mechanical and motorized equipment, which would warrant protective footwear. So long as the mandate affords a reasonable warning of the proscribed conduct in light of common understanding and practices, it will pass constitutional muster.
 
 
 13
 497 F.2d at 233 (emphasis added).
 
 
 14
 Our next encounter with this issue was B&B Insulation, Inc. v. OSHRC, 583 F.2d 1364 (5th Cir. 1978), a case under § 1926.28(a). Adopting the approach we had taken in Ryder, we again sustained the regulation against a vagueness attack. In doing so, however, we elaborated on the content of the "reasonable person" standard applicable to §§ 1910.132(a) and 1926.28(a). We noted that the "reasonable person" standard is borrowed from tort law and that industry custom is not dispositive on the issue of the standard of care in negligence actions. 583 F.2d at 1370. We concluded, however, that rigid application of the tort law concept would be inconsistent with the preventive goals of OSHA and Congress's expressed preference for specific rather than general standards.[6]
 
 
 15
 (T)he employer whose activity is not yet addressed by a specific regulation and whose conduct conforms to the common practice of those similarly situated in his industry should generally not bear an extra burden.
 
 
 16
 Where the Government seeks to encourage a higher standard of safety performance from the industry than customary industry practices exhibit, the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose.
 
 
 17
 Id. at 1371 (footnotes omitted). Because we found no evidence that employers in the insulation industry would customarily provide safety belts where B&B Insulation had not, and thus that B&B had no notice that its conduct might be in violation of § 1926.28(a), we reversed the Commission's affirmance of the citation.
 
 
 18
 In Power Plant Division v. OSHRC, 590 F.2d 1363 (5th Cir. 1979), we again applied the reasoning of B&B Insulation to reverse a Commission decision upholding a citation under § 1926.28(a). Unlike the record in B&B Insulation, however, in which there was substantial evidence of industry practices and of the employer's compliance with those practices, the record in Power Plant contained little or no evidence of industry custom. For that reason we remanded the case to the Commission for further fact-finding.
 
 
 19
 Finally, in Cotter & Co. v. OSHRC, 598 F.2d 911 (5th Cir. 1979), we reaffirmed our earlier conclusion in B&B Insulation that due process imposes essentially the same requirements on §§ 1910.132(a) and 1926.28(a) and reversed a citation under the general industry standard. In the process, however, we recognized that where an employer has actual knowledge of the requirements imposed by a regulation the problem of fair notice does not exist, and also recognized that an employer who has actual knowledge that personal protective equipment is necessary to protect its employees from a particular hazard may be found in violation of § 1910.132(a) even though its conduct complies fully with the general practice of the industry. We reversed the citation, however, because we found "no evidence in the record of a specific, confirmed knowledge on Cotter's part regarding a hazard warranting (mandatory personal protective equipment)." Id. at 915.
 
 
 20
 In its opinion in S&H I a majority of the Commission for the first time reached an agreement on the standard to be applied in reviewing citations under § 1926.28(a). The Commission held that:
 
 
 21
 (t)he crucial question in determining whether a hazardous condition exists within the meaning of § 1926.28(a) is whether a reasonable person familiar with the factual circumstances surrounding the allegedly hazardous condition, including any facts unique to a particular industry, would recognize a hazard warranting the use of personal protective equipment.... Although industry custom and practice are useful points of reference with respect to whether a reasonable person familiar with the circumstances would recognize a hazard requiring the use of personal protective equipment, they are not controlling.
 
 
 22
 OSHRC opinion at 10 (footnote and citations omitted). The Commission recognized the potential conflict between its position and the position of this court in B&B Insulation and Power Plant, but, because of its view "that an administrative agency charged with the duty of formulating uniform and orderly national policy in adjudications is not bound to acquiesce in the views of U. S. courts of appeals that conflict with those of the agency," (OSHRC opinion at 15) the Commission "respectfully decline(d) to follow B&B Insulation, Inc. v. OSHRC " (OSHRC opinion at 16) and, without further discussion, concluded "that a reasonable person familiar with the factual circumstances of the alleged hazard would recognize the presence of a fall hazard requiring the use of personal protective equipment when employees stand within 4 feet of an unguarded building perimeter, 40 feet above ground level." (Id.)
 
 
 23
 The Commission in S&H II and the ALJ in Standard relied upon the S&H I opinion without further elaboration of the standard for liability under § 1926.28(a).
 
 
 24
 We assume without deciding that the Commission is free to decline to follow decisions of the courts of appeals with which it disagrees, even in cases arising in those circuits.[7] This panel, however, does not have that freedom but must follow the precedent set by prior panels of the Fifth Circuit until and unless they are reversed by the court en banc or by the Supreme Court. U.S. v. Tibbetts, 646 F.2d 193, 195 (5th Cir. 1981); Robinson v. Parsons, 560 F.2d 720, 721 n.2 (5th Cir. 1977).
 
 
 25
 Moreover, even if we were free to depart from the rule of B&B Insulation, we would not do so. Although the rule of that case has not achieved universal acceptance,[8] we are persuaded that it is sound.
 
 
 26
 Due process mandates that an employer receive notice of the requirements of any OSHA regulation before he is cited for an alleged violation. A construction contractor or subcontractor forced to guess at the requirements of § 1926.28(a) cannot accurately determine the cost of safety equipment in preparing contract bids. If he believes that certain safety equipment is required when it is not, his bid may be noncompetitive with others that did not include the cost of such equipment, and he may lose the job. B&B Insulation, 583 F.2d at 1367 n.4. Conversely, if he determines that certain equipment is not required he may suffer crippling cost overruns if he is later required to provide the equipment. Many, if not most, of the regulations promulgated under OSHA are sufficiently specific concerning the circumstances in which safety precautions must be taken that adequacy of notice is not a significant problem.[9] The generality of § 1926.28(a), however, mandates that it be applied only in such a manner that an employer may readily determine its requirements by some objective external referent.
 
 
 27
 In theory the standard formulated by the Commission might be adequate to meet requirements of due process. Although the reasonable person standard "is one of the most nebulously defined concepts in the law, it has been, and in all probability will remain, one of the rudimentary precepts of our law." Ryder Truck Lines, 497 F.2d at 233. Possibly a reasonable person standard that does not accept industry practice as controlling can give employers adequate notice of the requirements of § 1926.28(a). The difficulty with the Commission's approach lies more in its application than its formulation. Without articulating in this or any other case the circumstances in which industry practice is not controlling or the reasons it is not controlling in any particular case,
 
 
 28
 the Commission would decide ad hoc what would be reasonable conduct for persons of particular expertise and experience without reference to the actual conduct which that experience has engendered. In other words, the Commission would assert the authority to decide what a reasonable prudent employer would do under particular circumstances, even though in an industry of multiple employers, not one of them would have followed that course of action.
 
 
 29
 B&B Insulation, 583 F.2d at 1370. Under the Commission's approach, whenever in the opinion of a majority of the commissioners safety equipment should be used that is not customarily employed in an industry, the Commission may simply declare that industry practice is not controlling and find a violation of § 1926.28(a); if the Commission and industry disagree as to the need for personal protective equipment under particular circumstances, industry is as a matter of law unreasonable. This we cannot accept. Due process requires that employers be given more advance notice than this of the requirements of any regulation imposing civil penalties and substantial compliance costs.
 
 
 30
 The Secretary points to the following language from Cotter & Co. as a clear indication that industry custom and practice are not always controlling:
 
 
 31
 We note that custom is not dispositive in negligence actions, even absent actual knowledge, for "what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903). There is, however, no compelling evidence presented on this record to the effect that steel-toed shoes ought to be required on shipping and receiving docks in the warehousing and distribution industry. Such a determination, absent clear and uncontradicted proof, is best left to the standard-making machinery provided in the Act. See B&B Insulation, 583 F.2d at 1370-72.
 
 
 32
 598 F.2d at 914 n.5. Indeed, we said in Cotter & Co. that industry custom and practice are not controlling under § 1926.28(a) if the employer has actual knowledge of a hazard requiring the use of personal protective equipment (which includes actual knowledge that personal protective equipment is required). Assuming that footnote 5 of our Cotter & Co. opinion creates an additional exception to the industry custom standard,[10] the requirements of that exception are not met in these cases. Each employer conceded that a fall from the heights involved in these cases, if it occurred, would result in serious injury or death, but the likelihood of such a fall and the potential additional danger to employees resulting from inhibited freedom of movement were hotly disputed. This is not "clear and uncontradicted proof" that safety belts ought to be required of roofing and concrete erection employees working on flat surfaces.
 
 
 33
 The viability of our holding in B&B Insulation is not undermined, as the Commission majority in S&H I seemed to believe, by the fact that two commissioners now agree upon the meaning of § 1926.28(a). In B&B Insulation we noted that, as of that time, no two members of the Commission had ever reached agreement on the regulation's meaning and that this fact lent some credence to the employer's argument that § 1926.28(a) is unconstitutionally vague. 583 F.2d at 1369. The Commission majority in S&H I understandably felt it important to reach a majority interpretation of § 1926.28(a) and expressed the belief that its efforts "should resolve any perceived ambiguities regarding an employer's duty of compliance." OSHRC opinion at 14.
 
 
 34
 Although " '(a)uthoritative judicial or administrative interpretations which clarify obscurities or resolve ambiguities' may cure arguably vague regulations," id. n.14, quoting from Diebold, Inc. v. Marshall, 585 F.2d 1327, 1338 (6th Cir. 1978), it is a sine qua non of such an interpretation that it provide adequate, objective notice of the standard of liability. This the Commission has not done. While employers may now be on notice that the two clauses of § 1926.28(a) are to be read in the disjunctive rather than the conjunctive,[11] they still must guess at the circumstances in which the Commission will find that conduct conforming to industry practice is a violation of the standard.
 
 
 35
 The Secretary argues that B&B Insulation was a case involving a freak accident in which the alleged hazard was apparent only in the light of hindsight and that the result turned on the Commission's failure to recognize this fact. He contends that, while B&B Insulation may require that industry custom be taken into account in determining whether a hazard exists, industry practice cannot be the sole basis for determining the appropriate response to an "obvious" fall hazard such as those in these cases. Otherwise, he argues, an entire industry could escape liability under OSHA by failing on an industry-wide basis to provide safe working conditions. This argument is foreclosed by our decision in Power Plant Division, in which we held that the rule of B&B Insulation barred a citation under § 1926.28(a) for failing to require employees to tie off their safety belts while working on a flat roof 86 feet in the air, in the absence of evidence that it was customary practice in the roofing industry to require employees to tie off under such circumstances. We perceive no significant distinction between the facts of Power Plant and those of the instant cases.
 
 
 36
 More importantly, the Secretary's argument misses the point of our holding in B&B Insulation. We did not hold that industry custom is controlling in all OSHA cases, or that the Secretary cannot impose standards more stringent than those customarily followed in an industry. We merely held that he cannot do so under as general and broadly worded a regulation as § 1926.28(a). Moreover, the Secretary overlooks that due process requires not only that employers be aware of a hazard but also that they have notice of what is required of them under the regulations in response to that hazard. The Secretary argues that where an obvious hazard exists, an employer is under an obligation to provide any personal protective equipment that is feasible and that would eliminate or reduce the hazard. While the Secretary is free to pursue this goal through other means, he cannot do so through selective enforcement of § 1926.28(a) because that regulation provides insufficient notice of such a requirement.
 
 
 37
 Moreover, the Secretary's argument rests on the faulty premise that the presence of an "obvious" hazard by itself gives notice of the need to provide safety belts or other protective equipment. Because a fall from the heights at which these employers' employees were working would most probably result in a serious injury or death, he argues that the need for safety belts was obvious. Yet "(t)he fact that serious injury may occur in a fall from a roof (or open floor) is not proof that working on a roof (or open floor) is likely to produce a fall." Southern Ohio Building Systems, at 459. Indeed, we have previously held that the very "obviousness" of a hazard may lead a reasonable employer to conclude that no further safety precautions are necessary. R. L. Sanders Roofing Co. v. OSHRC, 620 F.2d 97, 100-101 (5th Cir. 1980); Diamond Roofing Co. v. OSHRC, 528 F.2d 645, 650 (5th Cir. 1976). The perimeter of a flat roof or of the open floor of a prestress concrete building under construction is an obvious danger of which roofers and concrete erectors are highly conscious. Such workers, unlike general construction workers who are accustomed to working on railed or walled floors as well as open-sided ones, would not mistakenly expect the edge to be guarded or perform their work in a manner creating a significant possibility of a fall. See R. L. Sanders, 620 F.2d at 100-101, quoting from Diamond Roofing, 528 F.2d at 650 & n.11. In the absence of an industry custom or standard requiring the use of safety belts, or a history of fall accidents, an employer in the roofing or prestress concrete erection industry could reasonably conclude that employees' constant awareness of the danger of falling provides adequate protection against falls from flat, open surfaces.
 
 
 38
 Our adherence to a dispositive industry practice standard in applying § 1926.28(a) need not create a significant risk that an entire industry will escape liability under OSHA by failing on an industry-wide basis to provide adequate safety measures, thus endangering the health and safety of their employees and frustrating the will of Congress, because enforcement of an employer's obligation under OSHA is not limited to § 1926.28(a). If the Secretary believes that the custom and practices in an industry make inadequate provision for employee safety, he is empowered by the Act to promulgate regulations setting higher safety standards than those currently recognized.[12] All we held in B&B Insulation, and all we hold today, is that the Secretary cannot impose standards more stringent than those customarily followed in an industry under as general and broadly worded a regulation as § 1926.28(a).
 
 
 39
 The Secretary argues that even if we adhere to the position that industry practice is controlling under § 1926.28(a), the Commission should be affirmed in these cases on the ground that the employers had actual knowledge that personal protective equipment was necessary for their employees. In S&H II the Commission found that S&H "actually recognized ... the existence of a hazardous condition requiring the use of personal protective equipment." OSHRC opinion at 14 n.9. For the reasons discussed below, this finding was not supported by substantial evidence. The Secretary concedes that there was no finding of actual knowledge in either S&H I or Standard, but he asserts that this does not preclude our affirmance on this ground. Actual knowledge is an issue of fact, however, and the finding of facts is the role of the Commission and not of this court. We could not affirm the Commission on this basis unless the evidence compelled a finding of actual knowledge. If the evidence would support but not compel a finding of actual knowledge, a remand would be required in order to permit the Commission to complete the factfinding process. Brennan v. OSHRC, 494 F.2d 460, 464 (8th Cir. 1974). Because we hold that a finding of actual knowledge would not be supported by substantial evidence in the record of either case, however, a remand would be inappropriate.
 
 
 40
 In S&H I the Secretary contends that S&H had actual knowledge of the need for safety belts for its employees because the general contractor on that job erected a guardrail around the edge of each floor after S&H finished its work and before employees in other trades were allowed to enter, and because S&H knew this was done in order to conform to OSHA requirements. This argument must fail for the same reason as the Secretary's "obviousness" argument. Workers in prestress concrete erection are unlikely to forget that they are working near the edge of an open floor; consequently S&H could reasonably conclude that its employees did not need additional fall protection where a worker in an industry not accustomed to such working conditions might. Diamond Roofing; R. L. Sanders.
 
 
 41
 In S&H II Secretary argues, and the Commission found, that actual knowledge of the need for safety belts was established by evidence that S&H required its workers on the jobs involved in these citations to wear safety belts unless they felt that it was unsafe to do so.[13] Similarly, the Secretary argues that actual knowledge was established in Standard by the fact that Standard had required safety belts on one previous flat roof job and that Standard did not contest a previous citation for failing to require safety belts. In Cotter we rejected the notion that actual knowledge of a hazard requiring personal protective equipment may be established simply by reference to an employer's voluntary safety efforts.
 
 
 42
 We recognize, as did the First Circuit in (Cape & Vineyard Division of the New Bedford Gas and Edison Light Co. v. OSHRC, 512 F.2d 1148, 1154 (1st Cir. 1975)), the folly of discouraging an employer, by expanding the scope of his liability beyond what it would otherwise be, from exhorting employees to take every possible safety precaution in the development of a superior industrial safety program.
 
 
 43
 598 F.2d at 915. Moreover, there was evidence that S&H's employees were told to wear safety belts unless they felt it was unsafe to do so only because of the pending citation proceedings and not because S&H believed belts to be necessary, and although Standard may have believed that safety belts were necessary on one previous job, conditions on that job were described in insufficient detail to support a determination that they were substantially similar to those for which Standard was cited in this case.
 
 
 44
 Finally, we cannot accept the Secretary's assertion that Standard had actual knowledge that safety belts were necessary because it did not contest a previous citation for failure to require safety belts. First, there are any number of reasons why Standard may have chosen not to contest the previous citation, including the amount of time and effort necessary to do so in relation to the relatively minor ($250) penalty. Second, and more importantly, an uncontested citation for an alleged violation of § 1926.28(a) simply does not establish that the provision of safety belts is actually necessary even on the specific job for which the citation is issued, but only that the Secretary believes that belts are necessary. Where an employer's conduct conforms to the practices customary in his industry, it is not enough for the Secretary to show that the employer is aware that the Secretary would like to require personal protective equipment. It must be established that the employer has "specific, confirmed knowledge" that personal protective equipment is necessary. Cotter & Co., 598 F.2d at 914-15. Cf. Marshall v. B. W. Harrison Lumber Co., 569 F.2d 1303 (5th Cir. 1978), in which we held that the finality of an uncontested citation does not preclude, in a proceeding brought because of the employer's failure to correct the violation, an argument that the citation was insufficiently specific to let the employer know what was required of it, even though the compliance officer had directly informed the employer of what it was doing wrong.
 
 
 45
 To summarize our holding, due process requires that § 1926.28(a) be read to incorporate an objective industry practice standard. Accordingly, in order to sustain a citation under this regulation, the Secretary bears the burden of proving either that the employer failed to provide personal protective equipment to its employees under circumstances in which it is the general practice in the industry to do so or that the employer had clear actual knowledge that personal protective equipment was necessary under the circumstances. Because the Secretary did not sustain his burden in these cases, the Commission's orders affirming the citations issued to S&H Riggers and the citation against Standard Roofing are not supported by substantial evidence and must be reversed. Furthermore, because the Secretary was on notice from our opinion in B&B Insulation that such a showing is necessary to support a citation for an alleged violation of § 1926.28(a), and because the employers introduced uncontradicted evidence that their conduct was in conformity with the practices in their respective industries, a remand for further factual development would be inappropriate.
 
 
 46
 REVERSED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 [1]
 The regulation provides:
 The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.
 We have previously recognized that although § 1926.28(a) refers only to the "wearing" of personal protective equipment, "merely wearing safety equipment, but not using it, does not comply with (§ 1926.28(a))," Turner Communications Corp. v. OSHRC, 612 F.2d 941, 944 (5th Cir. 1980), and "that a 'safety belt is only used as a safety device when it is both worn and attached by a lanyard or lifeline to a stationary object.' " Marshall v. Southwestern Industrial Contractors & Riggers, Inc., 576 F.2d 42, 44 (5th Cir. 1978). Accordingly, in this opinion unless the context otherwise requires, references to the "wearing" of safety belts include proper tying off.
 
 
 [2]
 The analysis in this opinion applies equally to citations issued under 29 C.F.R. § 1910.132(a), the general industry analog to § 1926.28(a). See Owens-Corning Fiberglass Corp. v. Donovan, No. 79-2516, 659 F.2d 1285 (5th Cir. Oct. 26, 1981), decided this day. See also Cotter & Co. v. OSHRC, 598 F.2d 911, 913 (5th Cir. 1979); B & B Insulation, Inc. v. OSHRC, 583 F.2d 1364, 1369 (5th Cir. 1978)
 
 
 [3]
 We use the term "prestress concrete" rather than "prestressed concrete" because the parties do so
 
 
 [4]
 Each employer was also cited for other violations of OSHA regulations, but these are no longer in issue
 
 
 [5]
 29 C.F.R. § 1910.132(a) provides:
 Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation, or physical contact.
 
 
 [6]
 Speaking in support of a substitute bill that influenced the wording of the general duty clause of the Act, 29 U.S.C. § 654(a)(1), Congressman Steiger warned of the dangers of rigid application of tort concepts in the OSHA context
 Another argument offered in support of the committee bill's general requirement is that it is comparable to the general duty of care imposed in the law of torts. This argument is also unpersuasive. Tort law is concerned with providing for after-the-fact payment of damages by one whose negligent act actually caused an injury. To borrow merely the isolated general duty of care from the field of tort law and impose it, along with the sanctions of civil penalties, to provide a before-the-injury method of preventing the occurrence of industrial accidents, strikes me as incongruous. In tort law the general duty of care does not exist in isolation. It is surrounded by other factors which sharply limit it, and thus give it real meaning and practical application in the field of law in which it is used. Centuries of Anglo-American case law have refined the general duty of care through the judicial development of doctrines to serve as guides for the careful application of the general duty. Also, elaborate defenses have been developed to limit its otherwise unjust application. If we are to include any sort of general-care duty in this legislation, Mr. Chairman, we should also limit its terms so that persons upon whom it would impose a duty are not unjustly held accountable for situations of which they are completely unaware.
 
 
 [116]
 Cong.Rec. 38371 (1970)
 
 
 [7]
 But see, Ithaca College v. NLRB, 623 F.2d 224 (2d Cir.), cert. denied, --- U.S. ----, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980) (reversing NLRB order and declining to remand case to Board, in part because of Board's express refusal to follow Second Circuit precedent)
 
 
 [8]
 The Third and Fourth Circuits have declined to follow B&B Insulation. See Voegele Co. v. OSHRC, 625 F.2d 1075, 1078 (3d Cir. 1980) (affirming citation for failure to require safety belts for workers on flat roof with sharply sloping edges); Bristol Steel & Iron Works v. OSHRC, 601 F.2d 717, 723 (4th Cir. 1979) (reversing citation for failure to require safety belts for employees erecting float scaffold on ground Secretary had failed to prove feasibility of doing so)
 The Sixth Circuit, after some initial uncertainty, see Ray Evers Welding Co. v. OSHRC, 625 F.2d 726 (6th Cir. 1980), has apparently adopted the B&B Insulation approach, see Southern Ohio Building Systems, Inc. v. OSHRC, 649 F.2d 456 (6th Cir. 1981).
 For the somewhat remarkable view that § 1926.28(a) states a specific rather than a general standard, see Otis Elevator Co. v. OSHRC, 581 F.2d 1056 (2d Cir. 1978).
 The Secretary's efforts to use § 1926.28(a) to require safety belts for employees working at heights under circumstances not covered by other, more specific regulations have met with mixed success. For cases vacating citations issued under § 1926.28(a) for failure to require safety belts, see e. g., Southern Ohio Building Systems, Inc. v. OSHRC, 649 F.2d 456 (6th Cir. 1981); Ray Evers Welding Co. v. OSHRC, 625 F.2d 726 (6th Cir. 1980); McLean-Behm Steel Erectors, Inc. v. OSHRC, 608 F.2d 580 (5th Cir. 1979); Bristol Steel & Iron Works, Inc. v. OSHRC, 601 F.2d 717 (4th Cir. 1979); Power Plant Division v. OSHRC, 590 F.2d 1363 (5th Cir. 1979); B&B Insulation, Inc. v. OSHRC, 583 F.2d 1364 (5th Cir. 1978); Hoffman Construction Co. v. OSHRC, 546 F.2d 281 (9th Cir. 1976). See also Marshall v. Schreiber Corp., 620 F.2d 303 (6th Cir. 1980) (unpublished opinion affirming denial of leave to amend citation to charge violation of § 1926.28(a) rather than § 1926.500(d)(1), relating to perimeter guardrails); Cornell & Co. v. OSHRC, 573 F.2d 820 (3d Cir. 1978) (citation vacated because prejudicially amended to charge violation of § 1926.28(a) rather than § 1926.750(b)(2), relating to installation of flooring in structural steel erection, and § 1926.750(b)(1)(ii), requiring safety nets in structural steel erection). For cases affirming citations under § 1926.28(a), see e. g., Austin Building Co. v. OSHRC, 647 F.2d 1063 (10th Cir. 1981); Voegele Co. v. OSHRC, 625 F.2d 1075 (3d Cir. 1980); Turner Communications Corp. v. OSHRC, 612 F.2d 941 (5th Cir. 1980); Jensen Construction Co. v. OSHRC, 597 F.2d 246 (10th Cir. 1979); Otis Elevator Co. v. OSHRC, 581 F.2d 1056 (2d Cir. 1978); Irwin Steel Erectors, Inc. v. OSHRC, 574 F.2d 222 (5th Cir. 1978).
 In neither of the Fifth Circuit cases affirming § 1926.28(a) citations for failure to provide safety belts was the due process issue raised. The employer in Turner argued only that its employees were wearing safety belts and that the regulation did not require that the belts be tied off. See note 1, supra. The employer in Irwin Steel argued only that to require its employees to wear safety belts would expose them to a greater hazard; we affirmed because substantial evidence supported the Commission's conclusion that the employer had failed to demonstrate the existence of a greater hazard.
 With the arguable exception of Voegele, supra, we have found no cases in the courts of appeals affirming citations under any provision of the Act or regulations for failing to provide fall protection for employees working on flat roofs, and only one case, Brennan v. OSHRC, 513 F.2d 1032 (2d Cir. 1975) (affirming citation under 29 C.F.R. § 1926.500(d)(1), which sets standards for guardrails, for failure to provide guardrail around edge of open floor), affirming a citation for failure to provide fall protection for workers on open-sided floors. For cases in addition to those cited above vacating such citations, see e. g., R. L. Sanders Roofing Co. v. OSHRC, 620 F.2d 97 (5th Cir. 1980) (general duty clause); Diamond Roofing Co. v. OSHRC, 528 F.2d 645 (5th Cir. 1976) (general duty clause); Brennan v. OSHRC, 513 F.2d 713 (8th Cir. 1975) (affirming Commission order vacating citation under 29 C.F.R. § 1926.105(a), which requires safety nets where use of other fall protection devices is "impractical"); Brennan v. OSHRC, 488 F.2d 337 (5th Cir. 1973) (same). Cf. General Electric Co. v. OSHRC, 583 F.2d 61 (2d Cir. 1978) (vacating citation under 29 C.F.R. § 1910.23(c)(1), which requires guardrails around edges of open work platforms, for failure to provide rail around edge of large oven tops that maintenance workers occasionally stood upon).
 
 
 [9]
 Compare the general language of § 1926.28(a), supra note 1, with the much more specific requirements of, e. g., § 1926.451(1)(4) (applicable to employees using boatswain's chairs):
 The employee shall be protected by a safety belt and lifeline in accordance with § 1926.104. The attachment point of the lifeline to the structure shall be appropriately changed as the work progresses.
 § 1926.451(p)(9):
 Each employee working on a needle beam scaffold shall be protected by a safety belt and lifeline in accordance with § 1926.104.
 § 1926.451(t)(3):
 Window jack scaffolds shall be provided with guardrails unless safety belts with lifelines are attached and provided for employee.
 § 1926.451(w)(6) (applicable to employees working on float or ship scaffolds):
 Each employee shall be protected by an approved safety lifebelt and lifeline, in accordance with § 1926.104.
 § 1926.451(y)(11):
 Pump jack scaffolds shall be provided with standard guardrails as defined in § 1926.451(a)(15), but no guardrail is required when safety belts with lifelines are provided for employees.
 § 1926.700(b)(1) (applicable to fresh mix concrete erection, but apparently inapplicable to prestress concrete erection):
 Employees working more than 6 feet above any adjacent working surfaces, placing and tying reinforcing steel in walls, piers, columns, etc., shall be provided with a safety belt, or equivalent device, in accordance with Subpart E of this part.
 § 1926.750(b)(2)(iii) (applicable to structural steel erection):
 When gathering and stacking temporary floor planks from the last panel, the employees assigned to such work shall be protected by safety belts with safety lines attached to a catenary line or other substantial anchorage.
 § 1926.752(k) (applicable to structural steel erection):
 Employees shall be provided with safety belts in accordance with § 1926.104 when they are working on float scaffolds.
 and § 1926.951(b)(1) (applicable to employees working on power transmission and distribution lines):
 Body belts with straps or lanyards shall be worn to protect employees working at elevated locations on poles, towers, or other structures except where such use creates a greater hazard to the safety of the employees, in which case other safeguards shall be employed.
 Regulations such as those just quoted give employers clear notice of circumstances in which safety belts are required, which, in the absence of an industry custom or actual knowledge standard, § 1926.28(a) does not. By citing regulations applicable only to specific situations we do not, however, mean to imply that the Secretary must promulgate a separate regulation to cover each situation in which safety belts are required. A single regulation requiring belts for all employees in specified circumstances might satisfy the Secretary's concern for employee safety while at the same time give employers adequate notice of what is required of them.
 Although we do not base our decision on this factor, we note that an employer might, consistently with the principle expressio unius est exclusio alterius, conclude that the variety of regulations requiring safety belts in specific situations represented an exclusive listing of the circumstances in which safety belts are required rather than indicating a general need for safety belts for all employees working at heights.
 
 
 [10]
 We confess some uncertainty about the meaning and scope of this exception. It may be that it is nothing more than a reformulation of the actual knowledge exception. We are unable to imagine a case, at least in the absence of actual knowledge by the employer that personal protection equipment is required, in which there would be no contradictory evidence on the need for safety equipment
 
 
 [11]
 As originally promulgated § 1926.28(a) provided:
 The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions and where this part indicates the need for using such equipment to reduce the hazards to the employees.
 (Emphasis added.) The Ninth Circuit held the original version of the standard unenforceably vague as applied to require safety lines for employees working on a structure 40 feet above the ground. Hoffman Construction Co. v. OSHRC, 546 F.2d 281 (9th Cir. 1976).
 The regulation was amended by substituting "or" for "and" in the Secretary's December 16, 1972 revision of construction standards. See 37 Fed.Reg. 27,503 (1972). Because the revision was accomplished without compliance with the rulemaking procedures of 29 U.S.C. § 655(b) there has been much controversy over its validity. In their S&H I opinion Chairman Cleary and Commissioner Cottine held that the revision was properly characterized as "non-substantive" and that the two clauses should be read in the disjunctive because they were so read prior to the revision.
 Because we hold that, whether the two clauses of § 1926.28(a) are to be read in the disjunctive or the conjunctive, the standard must be read as incorporating an objective industry practice referent, we need not decide whether the majority's interpretation is correct.
 
 
 [12]
 We recognize that the decision whether to fill the interstices in a statutory scheme by rulemaking or by ad hoc adjudication "is one that lies primarily in the informed discretion of the administrative agency," SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947), although rulemaking is generally to be preferred whenever possible, id. at 202, 67 S.Ct. at 1580, 91 L.Ed. at 2002. Accordingly, we do not hold that rulemaking is the only available route to imposing greater personal protective equipment requirements than are customary in an industry. It may be that the Commission can, on a case-by-case basis, adequately articulate the circumstances in which § 1926.28(a) imposes requirements above and beyond industry practice so as to give employers sufficient advance notice of those requirements
 The criteria to be considered in promulgating such a regulation are of course for the Secretary to determine in the first instance. This court has neither the expertise nor the authority necessary to determine whether employees should wear safety belts, as opposed to whether a particular regulation gives employers sufficient notice of the obligations the Secretary would impose.
 
 
 [13]
 The Commission also relied on the fact that S&H's president is a member of an organization that is promoting the promulgation of a standard that would expressly provide that prestress concrete workers should not wear safety belts while positioning concrete panels. The Secretary has not mentioned this evidence in support of his actual knowledge argument. This factor is consistent with other testimony by S&H's witnesses and supports an inference that S&H believed it was dangerous to wear safety belts while erecting prestress concrete panels, not that S&H knew it was necessary to do so