**CORBESCO, INC., Petitioner,**

v.

**Elizabeth DOLE, Secretary, United States Department of Labor, and Occupational Safety and Health Review Commission, Respondents.**

No. 90–4192.

United States Court of Appeals, Fifth Circuit.

March 4, 1991.

Edward J. Fonti, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, La., for petitioner.

Barbara A.W. McConnell, Barbara Werthmann, Elizabeth Dole, Secretary of Labor, U.S. Dept. of Labor, Ray H. Darling, Jr., Executive Secretary, OSHRC, Washington, D.C., for respondents.

Before THORNBERRY, JOHNSON, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

Corbesco, Inc., has petitioned this court to review a decision by an administrative law judge (ALJ) of the Occupational Safety and Health Review Commission (the "Commission"), who found that Corbesco committed a serious violation of the Occupational Safety and Health Act of 1970 (the "OSH Act") by failing to install a safety net at one of its construction sites. The citation was issued after one of Corbesco's employees was killed when he was blown off of the flat roof of an aircraft hangar. Corbesco contends that its right to due process was violated because the regulation under which it was cited, 29 C.F.R. § 1926.105(a), is a general one and fails to give an employer adequate notice that it must use a safety net when its employees are working on the flat roof of a large building, like an aircraft hanger.

Although we agree that section 1926.-105(a) is a general industry standard, the Commission has consistently held that this regulation requires an employer to install a safety net even if the roof on which its employees are working is flat. These numerous holdings sufficiently notified Corbesco of its duty under the regulation; therefore, its right to due process was not violated, and we AFFIRM.

I.

FACTS AND PROCEDURAL HISTORY

Corbesco is an industrial roofing and siding installation company that was hired to put metal roofing and siding over the skeletal structure of five aircraft hangers at the Chennault Air Base in Lake Charles, Louisiana. In April 1987, Corbesco assigned three of its employees, two journeymen ironworkers and an apprentice, to work on the partially completed roof of Hangar B, a large single-story building, sixty feet high, 374 feet wide, and 574 feet long. The ironworkers were working off of the completed portion of one vertical half of the roof, the slope of which, from the peak to the eave, was very slight: one vertical inch for every horizontal foot.[1] The ALJ found that slope of the roof created no danger of slippage, and, therefore, "for all practical purposes, it was a flat roof." See Corbesco, Inc., OSHRC Docket No. 87–0611, at 3 n. 3, reprinted in Record on Appeal, vol. 1 (referred to hereafter as the "Commission Opinion").[2]

Before the ironworkers could lay the aluminum sheet metal roofing, they had to install insulation. To do this, they first would push a long sheet of corrugated metal away from the edge of the completed portion of the roof, leaving an exposed network of purlins and beams about six feet wide and 102 feet long. Next, they would roll out a six foot wide sheet of insulation onto the completed roof. Then, either kneeling or standing on the edge of the roof, they would shake the insulation out onto the exposed grid of rafters, just as one might shake out a bedspread over a

---

1. An Occupational Safety and Health Administration regulation specifically requires an employer to furnish a catch platform "below the working area of roofs more than 16 feet from the ground to eaves with a slope greater than 4 inches in 12 inches without a parapet." See 29 C.F.R. § 1926.451(u)(3) (1990).

2. The text of this opinion is not reported, but it is summarized in Corbesco, Inc., 14 O.S.H. Cas. (BNA) 1500 (Jan. 6, 1990).

bed. Because the workers had to maintain their balance while leaning over the edge of the roof, high winds could be very dangerous. Therefore, Corbesco regularly sought wind and weather forecasts from the National Weather Service.

On April 2, 1987, one of the ironworkers, Roger Mathew, was on his knees shaking out insulation when a gust of wind caught the sheet of insulation he was holding and pulled him forward. Mathew lost his balance and fell sixty feet through the open structure of steel to the concrete below. Mathew was killed by the fall. The record does not reveal whether Corbesco telephoned the Weather Service that day.

The next day, a compliance officer from the Occupational Safety and Health Administration (OSHA) inspected the hangar where Mathew had fallen and assessed a $1000 penalty against Corbesco for failing to a install safety net under the roof. The regulation cited by the officer was 29 C.F.R. § 1926.105(a), which provides that "[s]afety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical." *See* OSH Act, § 5(a)(2), 29 U.S.C.A. § 654(a)(2) (West 1985) (requiring employers to comply with promulgated occupational safety and health standards). The parties agree that none of the safety devices other than nets would have been practical. Because the officer determined that the absence of a safety net at the hangar presented "a substantial probability that death or serious physical harm could result," he classified the violation as "serious." *See* OSH Act, § 17(k), 29 U.S.C.A. § 666(k). *See also Phoenix Roofing, Inc. v. Dole,* 874 F.2d 1027, 1032 n. 12 (5th Cir.1989) (defining a "serious" violation under the OSH Act).

After the citation was given, Corbesco installed a safety net in the unfinished hanger, but it filed a notice of contest with the Department of Labor, and a hearing was conducted before an administrative law judge. At the hearing, Corbesco demonstrated that the custom and practice of the industry were that ironworkers did not use safety nets while working on flat roofs. *See* Commission Opinion at 3 n. 4. It also pointed out that OSHA officers had made several inspections of the hangar construction project while roofing work was being done and that the inspectors did not instruct Corbesco to use safety nets. As a consequence, Corbesco argued that it had no way of knowing that it was violating section 1926.105(a). The ALJ disagreed and affirmed the citation. He did, however, acknowledge that Corbesco had a good safety program and that its violation was not in bad faith. Therefore, he reduced the penalty to $50. *See* Commission Opinion at 14–15, 15 n. 31.

Corbesco petitioned the Commission for discretionary review. When no Commissioner directed that the case be reviewed, the decision of the ALJ became a final order of the Commission. *See* OSH Act, § 12(j), 29 U.S.C.A. § 661(j) (West 1985). Corbesco now asks us to review that order. *See id.* § 11(a), 29 U.S.C.A. § 660(a).

## II.

### A. STANDARD OF REVIEW

We are bound by the ALJ's factual findings if they are supported by the record. *Cleveland Consol., Inc. v. Occupational Safety and Health Review Comm'n,* 649 F.2d 1160, 1167 (5th Cir. Unit B July 1981). Additionally, because the ALJ's decision is the order of the Commission, we may reverse that decision only if his conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C.A. § 706(2)(A) (West 1977). Of course, we may also set aside that order if it violates Corbesco's constitutional rights. *See id.* § 706(2)(B). Finally, the Secretary of Labor's interpretation of 29 C.F.R. § 1926.105(a) should be upheld if it is reasonable. *See Everglades Sugar Refinery, Inc. v. Donovan,* 658 F.2d 1076, 1081 (5th Cir. Unit B Oct.1981).

### B. CORBESCO'S DUE PROCESS ARGUMENT

Corbesco argues that section 1926.105(a) is a "general" regulation and that because

the custom in this industry was not to use safety equipment, the Secretary of Labor (Secretary) was required to show that Corbesco had actual knowledge that it was required to furnish a safety net in order to comply with the regulation. *See S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n*, 659 F.2d 1273, 1285 (5th Cir. Unit B Oct. 1981). In *S & H Riggers*, this court reviewed three decisions by the Commission, all of which presented the same issue: "whether an employer whose conduct is in compliance with the custom and practice of its industry may be found to have violated 29 C.F.R. § 1926.28(a)"? *See* 659 F.2d at 1275. Section 1926.28(a) establishes a general duty for employers in the construction industry to provide safety equipment if their employees are exposed to hazardous conditions.[3] One of the employers that was cited for violating this regulation was Standard Roofing & Sheet Metal, Inc., a roofing and sheet metal contractor, whose employees were repairing a flat roof on a four story building without using any form of fall protection. *See id.* at 1276.

This court reversed the Commission's decision in all three cases. To comply with the due process requirement of the fifth amendment to the Constitution when issuing a citation under section 1926.28(a),

> the Secretary bears the burden of proving either that the employer failed to provide personal protective equipment to its employees under circumstances in which it is the general practice in the industry to do so or that the employer had clear actual knowledge that personal protective equipment was necessary under the circumstances.

*Id.* at 1285. Corbesco argues that the Secretary has the same duty under section 1926.105(a) and that, therefore, the Commission's decision must be reversed. The Secretary concedes that the general industry practice is that safety nets are not used when workers install roofing on large flat-roofed buildings such as aircraft hangars. The Secretary also concedes that Corbesco did not have "actual" knowledge that section 1926.105(a) required it to install a safety net; this is why Corbesco was not cited for "willfully" violating the regulation. *See* Record on Appeal, vol. 2, at 64 (testimony of OSHA Safety Specialist, Thomas Staggs). The Secretary's position, however, is that section 1926.105(a) is a "specific" standard, rather than a general one and, therefore, that the constitutional duty established by *S & H Riggers* does not apply to this case.

Section 1926.105(a) is "general" in that it applies to the entire construction industry rather than to one particular segment of it. *See Century Steel Erectors, Inc. v. Dole*, 888 F.2d 1399, 1401 (D.C.Cir.1989); *Brock v. Williams Enters.*, 832 F.2d 567, 570–71 (11th Cir.1987); *Donovan v. Daniel Marr & Son Co.*, 763 F.2d 477, 481 (1st Cir.1985). This labeling is not dispositive, however, because the wording of a general standard may be precise enough to make the employer's duty clear. *See* M. Rothstein, *Occupational Safety and Health Law* § 94, at 127 (3d ed. 1990). The employer's duty under section 1926.105(a) is much more specific than its duty under section 1926.28(a). Therefore, to resolve this dispute, we must decide the following questions: First, what is the constitutional standard with which the Secretary must comply when issuing a citation under an OSH Act regulation?; and second, did Corbesco receive sufficient notice either from the language of section 1926.105(a) or from other sources that it was required to comply with the regulation?

The touchstone for sufficiency of notice under the due process clause is reasonableness. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). If, for example, an OSHA regulation in-

---

**3.** Section 1926.28(a) states that "[t]he employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees." A similar duty is imposed on all industries by 29 C.F.R. § 1910.132(a). Therefore, the holding of *S & H Riggers* applies equally to citations issued under section 1910.132(a). *See S & H Riggers*, 659 F.2d at 1275 n. 2.

structs an employer to provide safety equipment for its workers if the work environment is dangerous, an employer cannot be cited for a hazard if a reasonable person in the employer's position would not have recognized that a hazard exists. *See B & B Insulation, Inc. v. Occupational Safety and Health Review Comm'n*, 583 F.2d 1364, 1370 (5th Cir.1978); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir.1974).[4] Therefore, in this case, the citation against Corbesco violated the due process clause of the fifth amendment if a reasonable employer in Corbesco's position would not have known that section 1926.-105(a) required it to install safety nets.

■ Put another way, the Secretary has the burden to prove that Corbesco had actual or constructive notice that section 1926.105(a) required it to install a safety net. To determine whether the Secretary has met that burden, we must examine the language of the regulation in the light of Corbesco's conduct. *See United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963). Most regulations establish explicit, unambiguous safety precautions that employers must take in specific situations; the wording of such regulations would satisfy the "reasonableness" test without considering additional factors. *See Faultless Div, Bliss & Laughlin Indus., Inc. v. Secretary of Labor*, 674 F.2d 1177, 1186–87 (7th Cir. 1982). *See, e.g., S & H Riggers*, 659 F.2d at 1280 n. 9 (listing specific regulations). If the language of the regulation is not specific enough, however, other sources may provide constructive notice: industry custom and practice, *see B & B Insulation*, 583 F.2d at 1371; the injury rate for that particular type of construction work, *see Owens–Corning Fiberglass Corp. v. Donovan*, 659 F.2d 1285, 1290 (5th Cir. Unit B Oct. 1981); the obviousness of the hazard, *see S & H Riggers*, 659 F.2d at 1283; and

the interpretations of the regulation by the Commission, *see id.* at 1283 n. 12.

If a workplace is more than twenty-five feet above the ground, an employer must furnish some form of fall protection. *See Cleveland Consol.*, 649 F.2d at 1166. The language of section 1926.105(a) gave Corbesco knowledge of this general duty. *See Williams Enters., Inc.*, 832 F.2d at 572; *Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1387 (D.C.Cir.1985); *Daniel Marr & Son Co.*, 763 F.2d at 484. However, the essence of Corbesco's due process claim is that it believed that it was complying with the regulation. Corbesco was required to furnish its workers with a safety net only if none of the following safety devices were being used: "[L]adders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts." *See* 29 C.F.R. § 1926.105(a) (1990); *Marshall v. Southwestern Indus. Contractors and Riggers, Inc.*, 576 F.2d 42, 45 (5th Cir.1978). Corbesco argues that the flat roof on which the employees were working served as a "temporary floor" and that the language of the standard is not specific enough to notify it otherwise. Indeed, Corbesco argues that this court held just that in *Brennan v. Occupational Safety and Health Review Comm'n*, 488 F.2d 337 (5th Cir.1973).

■ In *Brennan*, a construction company was cited for violating section 1926.-105(a) after an inspection officer discovered a welder working off a scaffold and a hoist operator working off of a roof, neither of whom were using a safety net or other safety device. See *id.* at 338. The company argued that the citation was inappropriate because the roof was a "temporary floor," and section 1926.105(a) requires an employer to use nets only if the use of scaffolds or temporary floors is "impractical." The Secretary asserted, however, that a safety device could not substitute for a net unless that device provided fall protection. *See id.* This court did not

---

**4.** Adequate notice is particularly important in the construction business because a contractor or subcontractor must be able to predict the cost of required safety equipment when bidding on a project. *See S & H Riggers*, 659 F.2d at 1279; *B & B Insulation*, 583 F.2d at 1367 n. 4.

In this case, Corbesco received $1.3 million for the construction job. Corbesco did not include the cost of installing safety nets under the five aircraft hangars when it made its bid. That cost would have exceeded $200,000.

reject the Secretary's interpretation of section 1926.105(a), but it held that the word "impractical" was too imprecise to convey that interpretation to the employer. Therefore, the court vacated the citation. *See id.* at 338–39.

We have our doubts about whether the language of section 1926.105(a) is specific enough to provide constructive notice that a safety net is required when ironworkers are working on a flat-roofed building larger than a football field. *See Forest Park Roofing Co.*, 8 O.S.H. Cas. (BNA) 1181, 1186 (March 31, 1980) (noting that section 1926.105(a) "is not more specifically applicable to" the hazards involved in repairing a flat roof than section 1926.28(a)). Falling from the edge of a flat roof is not a common hazard in the roofing industry. *See S & H Riggers*, 659 F.2d at 1283; *R.L. Sanders Roofing Co. v. Occupational Safety and Health Review Comm'n*, 620 F.2d 97, 101 (5th Cir.1980); *Diamond Roofing Co. v. Occupational Safety and Health Review Comm'n*, 528 F.2d 645, 650 & n. 11 (5th Cir.1976). Nevertheless, the Commission has frequently held that the regulation requires an employer to furnish either a safety net or one of the other enumerated safety devices if its employees are working near the perimeter of a flat roof more than twenty-five feet above the ground; the roof cannot serve as a temporary floor. *See, e.g., Hamilton Roofing Co.*, O.S.H. Cas. (BNA) 1771, 1775 (June 23, 1978); *R.D. Bean, Inc.*, 6 O.S.H. Cas. (BNA) 2030 (Sept. 25, 1978); *Diamond Roofing Co.*, 8 O.S.H. Cas. (BNA) 1080, 1083 (Feb. 29, 1980); *Universal Roofing and Sheet Metal Co.*, 8 O.S.H. Cas. (BNA) 1453, 1454 (May 28, 1980); *Midwest Steel Erection, Inc.*, 8 O.S.H. Cas. (BNA) 1538 (Sept. 12, 1980). These frequent interpretations of section 1926.105(a) have placed Corbesco in a different position than the employer in Brennan. Though the wording of the regulation remains imprecise, the Commission has now elucidated its meaning. In the light of these decisions, Corbesco had a duty to at least inquire whether it had to install safety nets under the hangers. *See, e.g., McGowan v. State of Maryland*, 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) (holding that business had a duty to make a reasonable investigation to determine whether it was violating State's Blue Law by selling certain items on Sunday); *Fluor Constructors, Inc. v. Occupational Safety and Health Review Comm'n*, 861 F.2d 936, 942 (6th Cir.1988) (noting that employer with doubts about the scope of a regulation should have "at least inquired of OSHA through its free on-site consultation program or made a written inquiry to clear up any uncertainties"); *Texas E. Prods. Pipeline Co. v. Occupational Safety and Health Review Comm'n*, 827 F.2d 46, 50 (7th Cir.1987) (noting that company failed to ask OSHA about the applicability of a construction safety standard). Therefore, we find that Corbesco had constructive notice of the duties imposed upon it, and its constitutional rights were not violated.

■ Moreover, we do not believe that the Commission has abused its discretion by determining that a flat roof cannot be a temporary floor. The purpose of the safety devices listed in the regulation is to provide fall protection, and a roof cannot provide fall protection if workers must operate along the perimeter. *See Williams Enters.*, 832 F.2d at 573 (holding that a device cannot serve as a "temporary floor" if employees are working on the temporary flooring); *Diamond Roofing Co.*, 8 O.S.H. Cas. (BNA) at 1084 ("If the unguarded perimeter of a temporary floor itself gives rise to a fall hazard, it would be anomalous to conclude that the temporary floor constitutes an adequate method of fall protection."). This, of course, is not to say that a *second* flat roof below the workplace cannot be a temporary floor; the second flat roof need only be positioned to provide fall protection.

■ We emphasize that the sole issue before this court is whether the Secretary violated Corbesco's constitutional right to due process by citing it for violating section 1926.105(a). Although there was some evidence in the record to indicate that it was not economically feasible for Corbesco to install safety nets in the aircraft han-

gers,[5] Corbesco did not argue that affirmative defense to this court and, therefore, has waived it. *See* Fed.R.App.P. 28(a); C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3974, at 421 n. 1 (1977 & Supp.1990) (citing cases). Moreover, a construction company that believes the cost of complying with an OSHA standard will outweigh the benefits of enhanced safety need not wait until it is cited to argue that compliance is infeasible. The company can seek a variance from the standard. *See* 29 C.F.R. § 1926.2 (1990); 29 C.F.R. §§ 1905.1 to 1905.51 (1990). Corbesco never pursued this alternative.

## III.

The Secretary did not violate Corbesco's right to due process because Corbesco had constructive notice that it was required to install safety nets under its crew while they were working on the edge of a flat roof some sixty feet above a concrete floor. The Commission frequently has said that a flat roof cannot serve as a temporary floor if workers must operate along the perimeter of such a roof as it does not provide fall protection; either a safety net or one of the alternate safety devices listed in section 1926.105(a) must be used. A reasonable construction company in Corbesco's position would have known about these interpretations of this standard. We AFFIRM the citation.

**5.** "A successful economic feasibility argument must demonstrate both that it is extremely costly for the employer to comply with the Secretary's order and that the employer cannot absorb this cost." *Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor,* 674 F.2d 1177, 1190 (7th Cir.1982); see also *Brock v. L.R. Willson & Sons, Inc.,* 773 F.2d 1377, 1389 n. 13 (D.C.Cir.1985). As we noted earlier, it would have cost Corbesco over $200,000 to install safety nets under the five aircraft hangers that it contracted to build. Corbesco's president testified that he would go out of business if forced to include the cost of installing safety nets in bids for similar projects. *See* Record on Appeal, vol. 2, at 200 (testimony of Clifford Cutrell).