United States Court of Appeals,

Fifth Circuit.

No. 93-4913.

PETERSON BROTHERS STEEL ERECTION COMPANY, Petitioner,

v.

Robert B. REICH, Secretary of Labor and Occupational Safety and Health Review Commission, Respondents.

July 21, 1994.

Petition for Review of an Order of the Occupational Safety and Health Review Commission.

Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and HEAD[*], District Judge.

HAYDEN W. HEAD, Jr., District Judge:

Peterson Brothers Steel Erection Company ("Peterson Brothers") petitions for review from a final order of the Occupational Safety and Health Review Commission (the "Commission") affirming a citation issued under the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*  This Court has jurisdiction pursuant to 29 U.S.C. § 660(a).

The citation was issued for a violation of 29 C.F.R. § 1926.105(a) after a Peterson Brothers employee, a "connector," was killed from a fall on the job.[1]  Peterson Brothers was hired to

---

[*]District Judge of the Southern District of Texas sitting by designation.

[1]29 C.F.R. § 1926.105(a) provides:

> Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

1

erect the structural steel framework for a seven-building IBM complex in Austin, Texas in July, 1990. The construction was performed two stories at a time. Connectors would install the upright columns first. Crane operators would then raise the horizontal beams for both floors being constructed in a Christmas tree formation and hold them in position to be attached. Connectors would temporarily secure each beam with two bolts. Other employees, called "bolters," then followed to install the remainder of the bolts.

Though the connectors wore safety belts while they worked, they did not attach any safety lines, or lanyards, to their belts in order to maintain the necessary mobility to perform their jobs. The bolters used safety belts and lanyards to secure themselves to the beams while they worked. After the bolts were tightened, temporary floors were installed on every other level to protect employees from falling into the interior of the structure. In addition, a cable was installed around the edge of the floor to protect the employees from perimeter falls. However, Peterson Brothers did not install safety nets on the outside of the building to protect against falls to the outside of the building. Accordingly, all employees were protected against falling while they worked, except the connectors were not protected from an exterior fall.

During the process of securing the horizontal beams, a beam suspended from a crane fell a short distance. Kevin Dean, one of the connectors, was straddling a beam at the perimeter of the

2

building when the beam struck him. The beam knocked Dean from his perch, and he fell 70 feet to the ground. After the accident, a compliance officer conducted an investigation. As a result of the investigation, a serious citation was issued to Peterson Brothers for failing to install safety nets to protect connectors working on perimeter beams as required by 29 C.F.R. § 1926.105(a).

Peterson Brothers contested the citation. After a hearing, an administrative law judge found Peterson Brothers committed a serious violation of § 1926.105(a), and affirmed the citation. On April 27, 1993, the Commission affirmed the administrative law judge's finding and assessed a penalty of $400.00. The Commission held (1) Peterson Brothers had fair notice that § 1926.105(a) applied to the steel erection industry, (2) the prima facie requirements for establishing a violation of § 1926.105(a) were satisfied, and (3) the use of safety nets was not infeasible due either to impossibility of compliance or to the economic infeasibility of using nets. On June 10, 1993, Peterson Brothers petitioned this Court for review of the Commission's order and challenges here each holding of the Commission.

I. Whether the Application of § 1926.105(a) Violated Peterson Brothers' Due Process Rights

Peterson Brothers contends it had no notice that it was required to install safety nets, and thus a citation based on a failure to do so violates the company's due process rights. The citation against Peterson Brothers would violate "the due process clause of the [F]ifth [A]mendment if a reasonable employer in [Peterson Brothers'] position would not have known that section

3

1926.105(a) required it to install safety nets." *Corbesco, Inc. v. Dole,* 926 F.2d 422, 427 (5th Cir.1991). In other words, the Secretary of Labor must prove that the company had actual or constructive notice that § 1926.105(a) required it to install safety nets. *Id.* The wording of a regulation establishing "explicit, unambiguous safety precautions that employers must take in specific situations" would satisfy the "reasonableness" test without requiring the consideration of additional factors. *Id.* (citing *Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor,* 674 F.2d 1177, 1186-87 (7th Cir.1982)). However, if the language is not specific enough, other sources, such as industry custom and practice, the injury rate for that particular type of construction work, the obviousness of the hazard, and the interpretation of the regulation by the Commission, may provide adequate constructive notice. *Id.* (citations omitted).

The Secretary argues Peterson Brothers had adequate notice of the safety net requirement. The Secretary points to Peterson Brothers' contention that prior to the inspection in this case, it read, and was familiar with, the decision in *Peterson Brothers Steel Erection Co.,* 13 O.S.H.Cas. (BNA) 1936 (Rev. Comm'n J. 1988) (digest) ("*Peterson Brothers I* "). In *Peterson Brothers I,* the Administrative Law Judge held that only the specific steel erection standards, embodied in Subpart R of the regulations, applied to the steel erection industry. In reaching that holding, the Administrative Law Judge relied on two Commission decisions, which were reversed on appeal to the Third and Eleventh Circuits. *See*

4

*Brock v. Williams Enters. of Georgia, Inc.*, 832 F.2d 567, 573 (11th Cir.1987); *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804 (3d Cir.1985). The Secretary argues that because the Administrative Law Judge cited that subsequent history of reversal in *Peterson Brothers I,* Peterson Brothers had notice the Commission's position was not reliable. The Secretary also contends that several appellate cases holding that § 1926.105(a) applies to the steel erection industry, which pre-dated the OSHA inspection of Peterson Brothers' worksite, gave further notice that Peterson Brothers could not reasonably rely upon the Commission's position. *See, e.g., L. R. Willson & Sons, Inc. v. Donovan,* 685 F.2d 664 (D.C.Cir.1982); *Donovan v. Daniel Marr & Son,* 763 F.2d 477 (1st Cir.1985).

Peterson Brothers relies heavily on the Fifth Circuit's decision in *Corbesco* to support its argument that a reasonable employer in the steel erection industry would not have known it was required to install safety nets pursuant to § 1926.105(a). In that case, one of Corbesco's employees was blown off the flat roof of an aircraft hangar and killed. As a result of the accident, the compliance officer cited Corbesco for failing to install safety nets. Corbesco contested the citation, arguing § 1926.105(a), as a general regulation, "fails to give an employer notice that it must use a safety net when its employees are working on the flat roof of a large building, like an aircraft" hangar. *Corbesco,* 926 F.2d at 424. The Fifth Circuit expressed doubts as to whether the wording of § 1926.105(a) is specific enough to give notice of its

5

requirements on its own. *Corbesco,* 926 F.2d at 428. However, the Court ultimately held Corbesco had constructive notice of the requirement to use safety nets because of other circumstances in the case. Specifically, the Court held the Commission's frequent holdings that the regulation requires an employer to provide a safety net or one of the other enumerated safety devices in circumstances like those at issue in *Corbesco* gave rise to a duty to at least inquire whether the employer had to install safety nets. Because the employer had constructive notice of the duties imposed upon it, its constitutional rights were not violated.

*Corbesco* does not provide support for Peterson Brothers' argument that a reasonable employer in the steel erection industry would not know that § 1926.105(a) applies. The Court did not address the issue of whether that general standard is preempted by the specific steel erection industry standards, nor did it address whether an employer in Peterson Brothers' position had sufficient notice that § 1926.105(a) applied. In fact, the applicability of § 1926.105(a) was not in issue in *Corbesco*—the Court addressed only whether § 1926.105(a), when applicable, gave adequate notice that safety nets were required when working on a flat roof.

Peterson Brothers argues the following factors would lead a reasonable employer to believe the installation of safety nets was not necessary. First, until several months after the accident at issue, the Commission maintained the position that the specific steel erection standards were the only ones applicable to the steel erection industry, *see Secretary of Labor v. Bratton Corp.,* 1990 WL

6

201595 (O.S.H.R.C.1990), and that the general construction industry standards were preempted by those specific standards. Second, the industry custom was not to use perimeter safety nets and Peterson Brothers was never cited for failing to use the nets, nor for violating § 1926.105(a). Third, no connector working for Peterson Brothers had ever fallen to the perimeter of a building being erected. Finally, Peterson Brothers contends the Secretary selectively enforced the standard, thus making it less likely a reasonable employer would know of its applicability.

Though we acknowledge that, at the time the citation was issued to Peterson Brothers, the Commission's position was unclear as to whether the specific steel erection standards preempted the general construction industry standards, we hold that other surrounding circumstances gave Peterson Brothers adequate notice that § 1926.105(a) applied. First, by the time the citation was issued, several circuit courts had addressed the issue, holding that the specific steel erection standards do not preempt the general construction standards where the steel erection standards provide no protection. *See, e.g., L. R. Willson & Sons, Inc. v. Donovan,* 685 F.2d 664 (D.C.Cir.1982) (§ 1926.750(b)(1)(ii), the specific steel erection standard, does not preempt § 1026.105(a), the general construction industry standard, because § .750(b)(1)(ii) specifies only measures for interior fall protection; § .105(a) provides the only standard for exterior fall protection); *Bristol Steel & Iron Works, Inc. v. Occupational Safety and Health Review Commission,* 601 F.2d 717, 721 (4th

7

Cir.1979) ("The general safety standard dealing with personal protective equipment found in 29 C.F.R. § 1926.28(a) complements the Subpart R specific standards dealing with steel erection ..."); *Brock v. Williams Enterprises of Georgia, Inc.,* 832 F.2d 567, 571 (11th Cir.1987) (because "Subpart R is not specifically applicable to exterior falls from perimeter beams, it does not preempt Section 1926.105(a). Therefore, Section 1926.105(a) applies to the steel erector industry"); *Donovan v. Adams Steel Erection, Inc.,* 766 F.2d 804, 807-10 (3d Cir.1985) (the steel erection standards do not deal with the particular hazard of an exterior fall from a perimeter beam; accordingly, the specific standards do not preempt the general requirement of safety nets found in § 1926.105(a)).

Second, as the Secretary pointed out, the opinion in *Peterson Brothers I* should have put Peterson Brothers on notice that the Commission's rulings in *Williams Enterprises of Georgia* and *Adams Steel Erection* had been reversed. Finally, in 1981, the Fifth Circuit applied § 1926.105(a)'s safety nets requirement to the steel erection industry. *See Cleveland Consolidated, Inc. v. Occupational Safety and Health Review Commission,* 649 F.2d 1160 (5th Cir. Unit B July, 1981). Accordingly, a reasonable employer in the steel erection industry would have had adequate notice that § 1926.105(a) applied to the steel erection industry, and the citation based on a violation of that regulation does not violate Peterson Brothers' due process rights.

II. Whether 29 C.F.R. § 1926.105(a) Was Violated in This Case

Peterson Brothers argues substantial evidence does not

support a finding of a violation of § 1926.105(a) in this case. Section 1926.105(a) provides:

> Safety nets shall be provided when work places are more than twenty-five feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts are impractical.

Because the company used safety belts and temporary flooring, Peterson Brothers contends, safety nets are not required. The company cites as support *Brennan v. Occupational Safety and Health Review Commission,* 488 F.2d 337 (5th Cir.1973) and *Brennan v. Occupational Safety and Health Review Commission,* 513 F.2d 713 (8th Cir.1975).

The company misses the point of the citation. The citation was directed at the hazard of an exterior fall facing connectors working on perimeter beams. Though it is true that Peterson Brothers installed temporary flooring and perimeter railing, and that some employees used safety belts, the connectors preferred not to use, and did not use, their safety belts with lanyards in order to maintain their mobility. Transcript from O.S.H.R.C. hearing at 86. The company was aware of this preference and did not require the connectors to use their belts, nor did the company use exterior nets. Finally, one of the company's own witnesses, Bill Landfair, testified that the connectors had no protection from exterior falls while working on beams at the perimeter of the building. Transcript at 127. Accordingly, the record clearly demonstrates the company provided no protection against exterior falls for the connectors. These facts establish a violation of § 1926.105(a).

9

*See Williams Enterprises of Georgia,* 832 F.2d at 572-73; *see also Marshall v. Southwestern Industrial Contractors and Riggers, Inc.,* 576 F.2d 42, 45 (5th Cir.1978) ("Where the safety belts were not "used' in any meaningful sense for a substantial portion of the workday, and the employees were afforded no protection from a dangerous fall, we are compelled by our holding in *Southwestern Contractors* to defer to the Secretary's reasonable interpretation that [§ 1926.105(a) ] requires the use of some means of reasonably continuous fall protection").

Further, neither case cited by Peterson Brothers supports the company's contention that its use of temporary floors and safety belts by other employees provided the necessary protection from exterior falls for the connectors. In *Brennan v. Occupational Safety and Health Review Commission,* 488 F.2d 337 (5th Cir.1973), the Fifth Circuit held § 1926.105(a) was not violated, despite the failure to use safety nets, when a welder was working on a mobile scaffold, and a hoist operator was attached to the hoist by a rope tied around his waist. Clearly, that case does not support Peterson Brothers' argument because the company in *Brennan* used other safety measures listed as alternatives to safety nets in the regulation to protect against the danger at issue in the citation. In *Brennan v. Occupational Safety and Health Review Commission,* 513 F.2d 713 (8th Cir.1975), the Commission held the employees, who were working on the roof and on scaffolding, were working on temporary flooring and scaffolding within the terms of § 1926.105(a), and no safety nets were required. The Eighth Circuit

10

affirmed that interpretation as reasonable. Again, the employer provided other safety devices enumerated in the regulation for the employees at issue, thus making safety nets unnecessary under the terms of the regulation. Both cases are distinguishable from the facts at hand because the evidence clearly shows that Peterson Brothers provided no alternative safety devices for the connectors. The record contained sufficient evidence to hold Peterson Brothers violated 29 C.F.R. § 1926.105(a).

III. Whether Peterson Brothers Established the Defense of Infeasibility of Compliance

Peterson Brothers argues the evidence raised the defenses of impossibility and economic infeasibility. The Secretary argues the Commission's ruling that Peterson Brothers failed to prove a valid affirmative defense is supported by the record and the applicable caselaw. We may reverse the Commission's decision only if its conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Corbesco,* 926 F.2d at 425 (citations omitted).

At the hearing before the administrative law judge, Peterson Brothers introduced evidence that it would be technically impossible to comply with the requirement that the nets be no more than 25 feet below the work area. Specifically, an expert witness, the former president of another large steel erection company, testified that it would be impossible to erect the nets within two stories of where the employees are working because the nets must be supported from two stories above the nets. Because the connectors were just beginning the construction on the level where the

11

supports would be attached, he testified, there would be nothing to which the supports could be attached in order to protect the connectors while they worked. Accordingly, the nets cannot be erected closer than three stories below where the connectors worked.

A compliance officer testified that because personnel safety nets would not need to be as large as material nets used to catch debris, personnel nets would not require the same amount of support. The supports for personnel nets could be welded to the edge of the temporary floor and extend straight out from that level without support from above.

The Commission acknowledged that the testimony of those two witnesses created a fact dispute as to whether it was impossible for Peterson Brothers to comply with the requirement that the nets be within 25 feet of where the connectors were working. However, the Commission declined to resolve the issue because "Peterson Brothers must comply to the extent it can even if complete compliance is not possible." Commission Decision at 14 (citations omitted). That conclusion is supported by the caselaw: "A technical defense, where some means of protection is available, is not an excuse for disregarding safety precautions. The Secretary's view, shared by the Commission, requires limited compliance where it furnishes some protection, even if exact compliance is not possible." *Cleveland Consolidated, Inc. v. O.S.H.R.C.*, 649 F.2d 1160, 1167 (5th Cir.1981). According to even Peterson Brothers' position, it would have been possible to erect nets three stories

12

below where the connectors were working, thus affording them some protection from exterior falls. The Commission's conclusion that Peterson Brothers did not establish the defense of technical impossibility was not an abuse of discretion.

Peterson Brothers also introduced evidence that it would be economically infeasible to use perimeter safety nets. Specifically, Peterson Brothers' president testified that using perimeter nets would have greatly increased the cost of performing the steel erection. He testified to an inexact estimate of what nets would have cost on this steel erection. Despite the fact that the sum was substantial, he testified his company had the resources to absorb the costs on this project if required to do so. However, he testified to his concern that the company would lose future business because he would have to increase his bids to incorporate the costs of using the nets, and his competitors, who do not use the nets, would not have to increase their bids accordingly.

A standard is economically infeasible where "increased costs would make the proposed substitute technology impracticable." *A. E. Burgess Leather Co. v. Occupational Safety & Health Review Commission,* 576 F.2d 948, 951 n. 2 (1st Cir.1978) (citing *Industrial Union Dept., AFL-CIO v. Hodgson,* 499 F.2d 467, 477 (D.C.Cir.1974)). The president of the company testified that Peterson Brothers could have absorbed the costs on the project in question. The company did not, however, introduce evidence of the effect the use of the nets would have on the existence of the company other than the assertion that the company could not

13

maintain competitive bidding because of the non-compliance of other companies. An employer cannot be excused from non-compliance on the assumption that everyone else will ignore the law. *A. E. Burgess Leather Co. v. Occupational Safety & Health Review Commission,* No. 12501, 1977 WL 6961, at *3 n. 2 (O.S.H.R.C. Feb. 24, 1977), *aff'd,* 576 F.2d 948 (1st Cir.1978). The Commission's conclusion that Peterson Brothers did not present sufficient evidence to find the installation of nets to be economically infeasible is not an abuse of discretion.

Accordingly, the decision of the Occupational Safety and Health Review Commission is AFFIRMED.