# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60462

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2016

Lyle W. Cayce
Clerk

WAL-MART DISTRIBUTION CENTER #6016,

      Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
THOMAS E. PEREZ, SECRETARY, DEPARTMENT OF LABOR,

      Respondents

Petition for Review of an Order of the Occupational
Safety and Health Review Commission

Before CLEMENT and HAYNES, Circuit Judges, and GARCIA MARMOLEJO, District Judge.*

HAYNES, Circuit Judge:

Wal-Mart Distribution Center # 6016 ("Wal-Mart") petitions for review of the decision of the Occupational Safety & Health Review Commission (the "Commission") that found that Wal-Mart failed to comply with 29 C.F.R. § 1910.132(d)(1).  For the reasons that follow, we AFFIRM the Commission's conclusion that the Secretary of Labor's ("the Secretary") interpretation of § 1910.132(d)(1) was reasonable.  However, because we determine that Wal-

* District Judge of the Southern District of Texas, sitting by designation.

No. 15-60462

Mart did not have adequate notice that its actions were noncompliant with § 1910.132(d)(1), we VACATE the citation and penalty.

## I. Background

In October of 2006, Wal-Mart performed a hazard assessment of its distribution center in Searcy, Arkansas, as required by 29 C.F.R. § 1910.132(d)(1), which states:

> The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE).

The Searcy distribution center is one of approximately 120 distribution centers operated by Wal-Mart nationwide. In January of 2008, the Occupational Safety and Health Administration ("OSHA") audited the Searcy distribution center as part of Wal-Mart's application to enter the Searcy location into OSHA's Voluntary Protection Program ("VPP").[1] During the audit, Wal-Mart informed OSHA that the hazard assessment for its Searcy location would be applied to its other distribution centers.

In February of 2008, OSHA inspected Wal-Mart's distribution center in New Braunfels, Texas. The following August, OSHA issued Wal-Mart a citation for failing to conduct a hazard assessment for its New Braunfels location, in violation of § 1910.132(d)(1), and imposed a penalty of $1,700.

An administrative law judge ("ALJ") affirmed the violation of § 1910.132(d)(1). He concluded that the Secretary reasonably interpreted § 1910.132(d)(1) to require Wal-Mart to conduct an individual hazard assessment of its distribution center in New Braunfels despite its alleged

---

[1] The VPP is a program that allows qualified companies with rigorous safety practices and strong safety records to avoid regular inspections. *See Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Review Comm'n*, 765 F.3d 434, 440 (5th Cir. 2014). OSHA recognized the Searcy distribution center as a VPP worksite in May of 2008.

No. 15-60462

similarities to the distribution center in Searcy, Arkansas. The ALJ rejected Wal-Mart's argument that its "cookie cutter" approach to constructing and operating distribution centers removed any need to conduct an individual hazard assessment of the New Braunfels distribution center, because this approach failed to confirm the uniformity of workplace conditions. He further rejected Wal-Mart's contention that a section of its safety manual established the existence of a hazard assessment of the New Braunfels location because this document failed to specifically mention the New Braunfels distribution center or certify that it represented a hazard assessment for that location. The ALJ thus concluded that the Secretary had established that Wal-Mart had violated § 1910.132(d)(1).

The Commission granted discretionary review of the ALJ's decision and, in a 2-1 decision, affirmed the violation of § 1910.132(d)(1). It concluded that because Wal-Mart had failed to personally observe that conditions at the New Braunfels distribution center were identical to those in Searcy, Wal-Mart had violated § 1910.132(d)(1). The Commission also rejected Wal-Mart's argument that it was not provided adequate notice that its practices failed to comply with § 1910.132(d)(1). Wal-Mart then petitioned our court to review the Commission's order.

## II. Jurisdiction and Standard of Review

The Commission had jurisdiction under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 659(c), and Wal-Mart timely petitioned for review as outlined in 29 U.S.C. § 660(a).

An agency's interpretation of its own regulation is "entitled to substantial deference." *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150, 158 (1991) (citation omitted) (holding that a reviewing court should defer to the Secretary of Labor when the Secretary and the Commission provide reasonable but conflicting interpretations of an

ambiguous regulation promulgated under the Occupational Safety and Health Act). As such, we "review the Secretary's interpretation to assure that it is consistent with the regulatory language and is otherwise *reasonable.*" *Id.* at 156.

The Commission's "legal conclusions are reviewed as to whether they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Trinity Marine Nashville, Inc. v. Occupational Safety & Health Review Comm'n*, 275 F.3d 423, 427 (5th Cir. 2001) (citations omitted). "Of course, we may also set aside [an] order if it violates . . . constitutional rights." *Corbesco, Inc. v. Dole*, 926 F.2d 422, 425 (5th Cir. 1991).

### III. Discussion

*A. Section 1910.132(d)(1)'s hazard assessment requirement*

The Supreme Court has stated that in interpreting OSHA regulations, if "the meaning of regulatory language is not free from doubt, [we] should give effect to the agency's interpretation so long as it is reasonable." *Martin*, 499 U.S. at 150 (citation omitted). When the regulatory language is ambiguous, we may also consult the regulation's preamble. *See Albemarle Corp. v. Herman*, 221 F.3d 782, 786 (5th Cir. 2000). Ambiguous regulatory language also permits us to consult the appendix accompanying an OSHA regulation as an interpretive aid. *See United Steelworkers of Am., AFL-CIO-CLC v. Schuylkill Metals Corp.*, 828 F.2d 314, 323 (5th Cir. 1987) (deeming a regulation's appendix as "in essence[,] an interpretive bulletin" and using it to interpret the regulation); *see also Article II Gun Shop, Inc.*, 16 BNA OSHC 2035 (Nos. 91-2146 & 91-3127, 1994), 1994 WL 541792, at *4 n.12 ("Statements made in a nonmandatory appendix to a standard may be used to shed light on the intent of that standard.").

The regulatory language of § 1910.132(d)(1) requiring employers to "assess the workplace to determine if hazards are present, or are likely to be

present" is ambiguous. It is unclear whether "assess the workplace" requires Wal-Mart to individually assess each of its distribution centers for hazards, or whether Wal-Mart may use a single hazard assessment for all distribution centers allegedly identical in layout and operations.[2] In short, the regulatory language is "not free from doubt" on the issue of whether Wal-Mart may use its Searcy hazard assessment for its New Braunfels location. *Martin*, 599 U.S. at 150.

The preamble fails to provide much additional clarity. It makes specific references to a "particular" workplace, *see* Preamble to the PPE Final Rule, 59 Fed. Reg. 16,336 (Apr. 6, 1994), lending some support to the Secretary's contention that each distribution center must be individually assessed for hazards. However, the preamble also gives discretion to the employer, stating that the regulation is a "performance-oriented provision"[3] in which the "employer is accountable . . . for the quality of the hazard assessment." *Id.*

The non-mandatory appendix to § 1910.132(d)(1) sheds some light on regulatory intent. It seems to envision that an employer should personally observe working conditions to adequately perform a hazard assessment. The appendix states that "in order to assess the need for PPE" an employer should "[c]onduct a walk-through survey of the areas in question" in which the safety officer should "observe" for potential hazards. 29 C.F.R. Pt. 1910, Subpt. I,

---

[2] Wal-Mart asserts that an interpretation of the regulation requiring individual hazard assessments for all its locations would render superfluous the language requiring employers to assess workplaces for hazards that "are likely to be present." 29 C.F.R. § 1910.132(d)(1). A more plausible interpretation is that this language merely accounts for the fact that a hazard may not necessarily manifest itself at the exact time a hazard assessment is being conducted and thus directs employers to assess the workplace for both readily apparent hazards and also hazards that could subsequently appear.

[3] Performance-oriented provisions are interpreted in light of a reasonableness standard. *Thomas Indus. Coatings, Inc.*, 21 BNA OSHC 2283 (No. 97-1073, 2007), 2007 WL 4138237, at *4 ("Because performance standards . . . do not identify specific obligations, they are interpreted in light of what is reasonable.").

App. B.3.  However, the appendix is clearly and explicitly designated as non-mandatory.  29 C.F.R. § 1910.132 ("Non-mandatory appendix B contains an example of procedures that would comply with the requirement for a hazard assessment.").

In sum, the regulation, the preamble, and the non-mandatory appendix fail to resolve the ambiguity as to whether Wal-Mart may use its Searcy hazard assessment as the hazard assessment for the allegedly identical New Braunfels location.  In such circumstances, we give substantial deference to an agency's interpretation of its own regulation.  *Martin*, 499 U.S. at 150.  The Secretary notes that even if distribution centers have identical designs, working conditions can change due to lack of maintenance, new equipment, change in personnel and adjustments to work processes.  Accordingly, the Secretary's interpretation of § 1910.132(d)(1), confirmed by the Commission, is "consistent with the regulatory language and is otherwise reasonable." *Martin*, 499 U.S. at 156.  While § 1910.132(d)(1) may not require an employer to conduct a full-fledged hazard assessment of all identical workplaces, it is reasonable to interpret § 1910.132(d)(1) to require an employer to confirm that workplaces are indeed identical before a hazard assessment for one workplace can qualify as the hazard assessment for another location.  We agree with the Commission's conclusion that the Secretary's interpretation of § 1910.132(d)(1) is reasonable.

## B. Adequate notice

The Secretary may issue citations as a means of interpreting an OSHA regulation, but "the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties." *Martin*, 499 U.S. at 158.  "The touchstone for sufficiency of notice under the due process clause is reasonableness." *Corbesco, Inc.*, 926 F.2d at 426.  The designation as an OSHA VPP workplace can also implicate

whether an employer had adequate notice. "To establish a lack of fair notice, [the employer] must show that, through the VPP, it had a fair expectation that OSHA had found its procedures satisfactory." *Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Review Comm'n*, 765 F.3d 434, 440 (5th Cir. 2014).

As mentioned above, before the Secretary clarified § 1910.132(d)(1) through its attempt to cite Wal-Mart, the regulatory language, the preamble, and the non-mandatory appendix of the regulation were ambiguous. Furthermore, Wal-Mart notified OSHA during the VPP audit of its Searcy location that it was using the Searcy hazard assessment as the assessment for its other distribution centers.[4]   OSHA subsequently recognized the Searcy location as achieving VPP status.  Thus, Wal-Mart has shown that "through the VPP, it had a fair expectation that OSHA had found its procedures satisfactory." *Id.*  In other words, at the time Wal-Mart was cited, a reasonable employer in Wal-Mart's position would not have known that its practices were a violation of § 1910.132(d)(1).  As such, the Secretary's citation of Wal-Mart violated Wal-Mart's due process right to adequate notice. *See Corbesco, Inc.*, 926 F.2d at 427.

## IV. Conclusion

Although we ultimately determine the Secretary and Commission's interpretation of § 1910.132(d)(1) to be reasonable, because Wal-Mart lacked adequate notice of that interpretation, we VACATE the citation and the related $1,700 penalty.[5]

---

[4] At oral argument, counsel for the Secretary claimed that the ALJ did not find that a hazard assessment was performed at the Searcy location.  On the contrary, the ALJ stated that "the record suggests that a hazard assessment of the Searcy Center was conducted."

[5] Because we hold that Wal-Mart did not receive fair notice of a potential violation of § 1910.132(d)(1), we need not address whether there was substantial evidence to support a citation.